636 A.2d 444

**Diane P. BRANTLEY, Personal Representative of the Estate of Archie P. Jones**

v.

**FALLSTON GENERAL HOSPITAL INC., et al.**

**No. 6, Sept. Term, 1993.**

Court of Appeals of Maryland.

Jan. 11, 1994.

Reconsideration Denied March 4, 1994.

Benjamin Lipsitz, Baltimore (Edward L. Keefer, Hydes, both on brief), for petitioner.

Kathleen Howard Meredith (Semmes, Bowen & Semmes, both on brief), and Michael J. Baxter (David J. McManus, Smith, Somerville & Case, all on brief), Baltimore, for respondents.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

McAULIFFE, Judge.

On 4 July 1981, Archie P. Jones was struck by an automobile while standing alongside another vehicle. He was taken to Fallston General Hospital (the hospital) where he was treated by several health care providers for severe injuries to his left leg. In November 1981, Jones settled his claim against the driver who struck him, and executed a general release. Three years later, in November 1984, following

extensive treatment by the doctors and multiple admissions to the hospital, Jones was required to undergo amputation of his left leg below the knee. Thereafter, in July 1986, Jones filed a claim with the Health Claims Arbitration Office, contending that the hospital, Dr. Alberto Barretto, and others were negligent in providing medical and hospital care for his injuries.

The chairman of the arbitration panel granted summary judgment in favor of all defendants, finding that the release earlier executed by Jones applied to those who rendered medical treatment after the accident as well as to the original tortfeasor. Jones filed an action in the Circuit Court for Baltimore City to nullify the arbitration award. The defendants successfully challenged venue, and the action was transferred to the Circuit Court for Harford County. The hospital and Dr. Barretto are the only defendants in that action who are before this Court.[1] The hospital and Dr. Barretto moved for summary judgment in the circuit court, again arguing that the release given by Jones effectively released them from liability. Those motions were denied on 19 June 1990.

On 20 August 1990, Jones died of causes unrelated to his claims. For more than a year after his death, his case remained inactive. No papers were filed until 6 November 1991, when Dr. Barretto filed a motion to dismiss for lack of prosecution, citing Maryland Rule 2–507.[2] Benjamin Lipsitz, counsel for Jones (counsel), responded to the motion on 25 November 1991, and filed a request for a hearing. He stated

---

1. Jones sued another doctor, who was never served. He also sued the hospital administrator, but summary judgment was entered against Jones in that claim, and he did not appeal from that action.

2. Rule 2–507 states, in relevant part:
    (c) An action is subject to dismissal for lack of prosecution at the expiration of one year from the last docket entry. . . .
    (d) When an action is subject to dismissal pursuant to this Rule, the clerk, upon written request of a party or upon the clerk's own initiative, shall serve a notice on all parties pursuant to Rule 1–321 that an order of dismissal for lack of . . . prosecution will be entered after the expiration of 30 days unless a motion is filed under section (e) of this Rule.

that his response was "submitted in behalf of Archie P. Jones, plaintiff (now deceased), and/or his heirs at law and/or other persons interested in his estate and/or claiming through him...." He represented that his co-counsel, Edward L. Keever, had encountered some difficulty in locating Jones' heirs because Jones had died a widower without children. Counsel represented that he had discovered a niece, however, who was "ready, willing, and able to proceed with this action." He asked for additional time to substitute the niece as a party.

On 2 December 1991, Dr. Barretto's motion to dismiss was granted, without a hearing. Shortly thereafter, the hospital filed a motion to dismiss, and counsel filed another response, much the same as the response earlier given to Dr. Barretto's motion. The court granted the hospital's motion to dismiss on 21 January 1992, again without a hearing. Counsel noted an appeal on 19 February 1992. The notice of appeal was filed by counsel "on behalf of Archie P. Jones, plaintiff (now deceased) (and/or his heir(s) at law and/or other person(s) interested in his estate and/or claiming through him)...."

Counsel argued on appeal that the decision to grant the motions to dismiss should be reversed for several reasons. First, he contended that it was error to grant dispositive motions without conducting a hearing when a hearing had been requested. Second, he argued that the motions under Rule 2–507 should not have been granted because the clerk of court had not issued a notice of contemplated dismissal, as required by the Rule. Third, he argued that even if proper procedures had been observed, the trial judge incorrectly determined that the delay in prosecution was without substantial justification.

The Court of Special Appeals affirmed the dismissals, in an unreported opinion. The court determined that Rule 2–507 permits a motion to dismiss to be filed by a party, and in that instance does not require the clerk of the court to issue the

notice of contemplated dismissal.[3]   The intermediate appellate court also found that because counsel had requested a hearing in his own name, and not on behalf of any existing party, the lower court was not bound to honor the request.   Finding no abuse of discretion by the trial judge, the court refused to set aside the dismissals.

We granted certiorari, and before this Court the defendants raise a new question based on part of the rationale of the Court of Special Appeals decision.   They suggest that if counsel was without authority to request a hearing because his client had died, he similarly was without authority to file an appeal to the Court of Special Appeals, and consequently that appeal should be dismissed.

Ordinarily, under well-established principles of agency law, an agent's authority terminates upon the death of the principal.   *See Restatement (Second) of Agency,* § 120 (1958). The lawyer-client relationship is not excepted from this rule. *Switkes v. John McShain,* 202 Md. 340, 348, 96 A.2d 617 (1953).   Thus, we have specifically held that an attorney has no authority to note an appeal on behalf of a client who has died.   *Id.* at 350, 96 A.2d 617.   Although an agency coupled with an interest may survive the death of the principal, we have held that "the interest must be in the subject matter of the power ... and not merely in [its] proceeds ...," *id.* at 348–49, 96 A.2d 617, so that the expectation of earning a fee from the representation is not sufficient to constitute an 'interest' that will extend the relationship.   *Id.* at 348–50, 96 A.2d 617.   *See also Karr v. Shirk,* 142 Md. 118, 121–24, 120 A. 248 (1923).

In *Owings v. Owings,* 3 Gill & J. 1, 2–4 (1830), an attorney filed an appeal after his client died.   This Court dismissed the appeal, holding that it was not just "a mere irregularity, but a

---

**3.**   In so holding, the Court of Special Appeals adhered to the view it had taken earlier in *Byrne v. Amalgamated Transit Union,* 73 Md.App. 551, 535 A.2d 503, *cert. denied,* 312 Md. 601, 541 A.2d 964 (1988).   Because this appeal must be dismissed, we express no opinion as to the validity of that holding.

complete and radical defect." *Id.* at 4. More recently, in *Switkes,* a worker's compensation claimant died shortly after his claim was denied. Two days after his death, his attorney filed a timely notice of appeal. The appellees successfully moved to dismiss the appeal by arguing that counsel had no authority to act on behalf of a deceased client, and the widow did not herself appeal within the time allowed. *Switkes, supra,* 202 Md. at 350, 96 A.2d 617.

We hold in this case that counsel's authority to file an appeal terminated upon the death of his client. At the time he noted the appeal, no personal representative had been appointed, and no other real party in interest had been substituted in the action.[4] Thus, when counsel filed the appeal, he purported to be acting on behalf of a non-existing client.

Next we consider whether counsel might have properly taken the appeal in his own name. Again, *Switkes* compels an answer in the negative. We considered and rejected the same question there, where we held that an "attorney has no right in his own name and on his own motion to appeal from an order or judgment of the court below affecting the interests of his client." *Switkes, supra,* 202 Md. at 347, 96 A.2d 617, quoting *National Park Bank v. Lanahan,* 60 Md. 477, 515 (1883). Two exceptions to this rule have been recognized in other states: these involve an attorney who can demonstrate a personal interest in the litigation other than a fee, *id.* 202 Md. at 348, 96 A.2d 617; and the attorney who can show that he or she was specifically retained by the client to continue the representation even beyond death. *See Vincent v. Vincent,* 16 Wash.App. 213, 554 P.2d 374, 378 (1976).

---

4. Diane Brantley, Jones' niece, qualified as personal representative of Jones' estate on 20 May 1992, while the appeal was pending before the Court of Special Appeals. Upon qualifying, she filed with that court a "Notice Substituting Personal Representative as Party Appellant," and the caption of the case was changed to reflect her appearance. This substitution came too late, and "[i]t could not be considered a ratification of the appeal which had been taken earlier, because there was nothing to ratify, that appeal having been a nullity." *Switkes v. John McShain,* 202 Md. 340, 350, 96 A.2d 617 (1953).

In this case, counsel has not made any showing that either of those exceptions would apply. Accordingly, we hold that counsel was not permitted to file the appeal in this case in his own name.

Petitioner argues that an attorney for a deceased party should be granted standing to protect the cause of action while attempts are made to locate and substitute a successor in interest, because to hold otherwise would conceivably work an injustice. We have traced the history of Maryland Rule 2–241, pertaining to substitution of parties, and we fail to find any indication that an attorney for a deceased party has ever been granted standing to act in his own name.

At common law, an action of this type would have died with the plaintiff. *Stewart v. United Elec. L. & P. Co.*, 104 Md. 332, 333, 65 A. 49 (1906). When the rigors of the common law in this area were ameliorated by legislation, *see e.g.*, Chapter 80 of the Laws of 1785, and Chapter 262 of the Laws of 1888, the legislature provided a detailed procedure to be followed when a party died but the action survived. This procedure remained a part of the statutory law of this State until 1957, when §§ 29–38 of Article 75 of the Maryland Code were repealed and replaced by Rule 220 of the Maryland Rules of Procedure. Rule 220 carried forward much of the detailed procedure of the former statute, and continued to be authority for the substitution of a party in the event of death until 1984, when that Rule was superseded by Maryland Rule 2–241.

The earlier statute and Rule, like its current counterpart, permitted the personal representative (or in an appropriate case an heir or other proper person) to be substituted for the deceased claimant. Under the statute, if a successor in interest did not appear and request substitution at the term of court at which the suggestion of death was made, the defendant would issue a summons for the proper person to prosecute the action. If that person failed to appear in obedience to the summons, the court issued an attachment of contempt, and if no appearance was made within a stated time after service

of the attachment, judgment of non-suit was entered. Article 75, § 32, Maryland Code (1951).

Under Maryland Rule 220, the procedure to be followed if a successor in interest or a deceased plaintiff did not voluntarily appear was similar to that formerly required by the statute. If a successor in interest did not appear and ask to be substituted within 30 days of a party's death, the opposite party was to file a motion suggesting the death and identifying the successor in interest. The court then issued process for the successor in interest, calling upon that person to appear and prosecute or defend the action. If after being served the successor in interest did not appear, the court could dispose of the case as in other cases of default. Rule 220 also provided that if neither the successor in interest nor the opposing party filed a suggestion of death, the "attorney for any person affected by the action" could file a suggestion of death. Rule 220 e. of the 1957 Rules of Procedure provided:

> If the successor in interest of a deceased party and the opposite party shall both fail to suggest the death of a deceased party, the attorney for any person affected by the action may, by motion in writing, suggest the death. Upon the filing of such motion, or upon its own motion the court may issue an order directed to the successor in interest calling upon him to appear and prosecute or defend the action or to the opposite party requiring him to cause the substitution of a proper party.

Rule 220 f. provided that "[i]f substitution is not made within one year from the date of service of the order provided for in section e of this Rule, the action may be dismissed as to the deceased party."

■ Nowhere in the former statute or Rule is it made to appear that the attorney for a deceased party may continue the action, in the name of the decedent or in the attorney's own name. To the contrary, the specified procedure was designed to afford a reasonable time for substitution of a successor in interest after proper notice, and dismissal or default if appropriate action was not taken. Rule 2–241,

though Spartan in its description of action to be taken when there is no voluntary substitution, similarly does not purport to authorize continuance of an action by the attorney for a deceased party.

Under ordinary circumstances, the identity of the proper successor in interest for a deceased plaintiff is easily ascertainable, and substitution is readily accomplished. In those cases where there will necessarily be some delay in having a personal representative appointed, anyone, including the attorney who represented the deceased plaintiff, may notify the court of the death of the party. In the typical case, the court will then order a stay of proceedings for a reasonable period of time to permit substitution.

In the case before us, it is somewhat difficult to understand why Diane Brantley could not have been properly named personal representative of her uncle's estate, and substituted as plaintiff. Her identity was apparently known from the date of death, because her name was listed on Jones' death certificate as the person providing pertinent information, together with her Baltimore address. Although Jones apparently had no other assets at the time of his death, administrative probate for the purpose of pursuing this cause of action was readily granted by the Register of Wills for Baltimore City. *See* Maryland Code (1974, 1991 Repl.Vol.) Estates and Trusts Article, § 5–602. Counsel did not purport to represent a specific successor in interest at the time he noted an appeal. Because he had no standing or authority to appeal at that time, the appeal should have been dismissed.

JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO DISMISS THE APPEAL; COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.