895 A.2d 1034

**Carl SURLAND**

v.

**STATE of Maryland.**

**Stefan Tyson Bell**

v.

**State of Maryland.**

**Nos. 8, Sept. Term, 2005, 45, Sept. Term, 2005.**

Court of Appeals of Maryland.

April 11, 2006.

Martha Weisheit, Assistant Public Defender (Nancy S. Forster, Public Defender, Baltimore, for appellant in 8 Sept. Term, 2005.

Sarah Page Pritzlaff, Assistant Attorney General (J..Joseph Curran, Jr., Attorney General of Maryland, Baltimore), on brief, for appellee in 8 Sept. Term, 2005 and for respondent in 45 Sept. Term, 2005.

George E. Burns, Jr., Assistant Public Defender (Nancy S. Forster, Public Defender, Baltimore), on brief, for petitioner in 45 Sept. Term, 2005.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

WILNER, J.

We are asked in these two cases to revisit what the appropriate response should be when a defendant, convicted in a Circuit Court of a criminal offense, notes a timely appeal to the Court of Special Appeals (or, in a death penalty case, to this Court) but dies before the appeal is decided.

The law throughout the country seems clear, and by now mostly undisputed, that, if the defendant's conviction has already been affirmed on direct appeal and the death occurs while the case is pending further discretionary review by a higher court, such as on *certiorari,* the proper course is to dismiss the discretionary appellate proceeding and leave the existing judgment, as affirmed, intact. The Supreme Court has adopted that view, and so have we. *See Dove v. United States,* 423 U.S. 325, 96 S.Ct. 579, 46 L.Ed.2d 531 (1976), overruling, in that regard, *Durham v. United States,* 401 U.S. 481, 483, 91 S.Ct. 858, 860, 28 L.Ed.2d 200, 203 (1971); *Jones v. State,* 302 Md. 153, 158, 486 A.2d 184, 187 (1985).

There is no such consensus when the death occurs during the pendency of an appeal of right, however. From the case law around the country, there seem to be several basic choices on the menu of options:

(1) Dismiss the appeal as moot and direct as well that the entire criminal proceeding, from the charging document through the trial court's judgment, be abated (voided).

(2) Dismiss the appeal as moot and either expressly leave the trial court's judgment intact or say nothing about the continuing vitality of that judgment (which presumably will either leave the judgment intact or reserve the issue for future litigation).

(3) Dismiss the appeal as moot, abate the conviction and any purely punitive part of the judgment but allow one or more adjunctive aspects of the judgment, such as an order of restitution and possibly court costs and fines that have already been paid, to remain intact.

(4) Resolve the pending appeal, notwithstanding the death of the appellant, and let the fate of the trial court's judgment be determined by the result of the appeal. A variant of this approach, and perhaps that of (3), is to allow the appeal to continue only if, by reason of an order of restitution or a fine, the appellant's estate has a financial interest in resolving the validity of the judgment and wishes the appeal to continue. A variant of that is to allow the appeal to continue in any case in which a substituted party is appointed and elects to continue the appeal, or counsel of record elects to continue it.

(5) Dismiss the appeal as moot and direct that a note be placed in the record that the judgment of conviction removed the presumption of the defendant's innocence, that an appeal was noted, and that, because of the death of the defendant, the appeal was dismissed and the judgment was neither affirmed nor reversed.

Each of these options attempts to balance competing public policies, and advantages and disadvantages, justifications and non-justifications, have been offered as to each of them. The Federal courts have mostly adopted the first approach, although some, including the Court of Appeals for the Fourth Circuit, have opted for the third, to leave in effect restitution orders, and, in some of the decisions, fines that already have been paid have not been disturbed.

A slight majority of the States that have ruled upon the matter also favor the first approach, although some that would ordinarily abate the entire proceeding have opted to leave restitution orders in place and thus are really in the third category. About twelve State courts have adopted the second option, of either expressly leaving the judgment of conviction intact or dismissing the appeal and saying nothing about that judgment. Approximately seven States have chosen to pro-

ceed with the appeal if a substituted party elects to do so, and Alabama, so far alone, has chosen the fifth approach, which also leaves the judgment intact. A few courts that have leaned toward the first approach have at least considered whether that approach should be followed if the death was due to suicide—whether a defendant should get the advantage of a full abatement if he or she effectively frustrated the appeal and thus created the problem. Most of those courts have ended up rejecting the distinction. *See United States v. Oberlin,* 718 F.2d 894, 896 (9th Cir.1983); also Joseph Sauder, *How a Criminal Defendant's Death Pending Direct Appeal Affects the Victim's Right to Restitution Under the Abatement Ab Initio Doctrine,* 71 Temple L.Rev. 347 (1998). Maryland, at this point, is with the majority, although, as we shall explain, this Court has yet really to explore and evaluate the competing public policy considerations and has not expressly determined what to do about restitution orders.

## BACKGROUND

### Surland

We have consolidated two cases—*Surland* and *Bell.* In May, 2004, Surland was convicted in the Circuit Court for Anne Arundel County of theft of property under $500, for which he was sentenced to one year in jail, all but ten weekends of which was suspended. The offense arose from a shoplifting—stealing about $65 worth of razor blades from a drug store. Surland noted an appeal to the Court of Special Appeals, complaining that (1) the trial court erred in admitting evidence that, in attempting to leave the store, he assaulted two store detectives, and (2) the State failed to prove corporate ownership of the stolen items. Before the intermediate appellate court could resolve the appeal, we granted *certiorari,* principally to consider the first issue.

Just prior to scheduled oral argument, Surland died, and defense counsel moved that we vacate his conviction and remand the case with instructions to dismiss the indictment. Counsel advised that, because the trial court had not ordered

restitution, no victim's rights would be affected by such a ruling. The State opposed the motion, urging that we do no more than dismiss the appeal.

## *Bell*

In August, 2003, Bell was convicted in the Circuit Court for Anne Arundel County of first degree murder and conspiracy to commit first degree murder, for which he was sentenced to consecutive terms of life imprisonment, the imprisonment for the murder being without the possibility of parole. Although the murder victim's parents apparently followed the case closely, no order of restitution was entered.

Bell noted a timely appeal to the Court of Special Appeals, but, prior to resolution of the appeal, he died. His attorney moved to dismiss the appeal and the indictment. The appellate court denied the motion, without prejudice to renewing it upon a showing that no victims' rights would be prejudiced by the granting of the motion and that any victim whose rights would be affected was served with the renewed motion. In April, 2005, counsel filed a renewed motion, seeking the same relief and contending that he was unaware of any victim's right that would be relevant and that there was no requirement in any event to notify victims or victims' representatives.

The State filed a response, noting that the murder victim's parents had been closely involved in the trial proceedings and that they had been informed by the State of counsel's motion to dismiss. The State agreed that the appeal should be dismissed but urged that the convictions should stand and that the indictment should not be ordered dismissed. Although clearly not parties to the case, at either the trial or appellate level, the victim's parents, through the Maryland Crime Victims' Resource Center (MCVRC), also filed a response in opposition to the motion. They urged that the court not direct the eradication of the conviction or indictment but should instead adopt the view taken by courts in Idaho and Alabama that such a policy would be unfair to crime victims.

The Court of Special Appeals found potential merit in those responses. By action of its Chief Judge, it entered an order granting the motion to dismiss the appeal but remanded the case to the Circuit Court with instructions "to hold a hearing at which all parties, including the victim's parents, are represented, to determine in the first instance whether [the indictment] should be dismissed."

Bell, obviously through counsel, filed a petition for *certiorari*, seeking review of whether the intermediate appellate court erred in "disregarding the precedents of this Court requiring that when an Appellant dies before resolution of his direct appeal, both the appeal and the indictment be dismissed," and whether the Chief Judge of the Court of Special Appeals was authorized to act alone in remanding the case for a hearing in the Circuit Court. The State answered the petition, arguing that (1) the order of the Court of Special Appeals was correct, (2) *certiorari* was premature in any event, because the only issue in real dispute—whether the indictment should be dismissed—had not yet been resolved, but was simply remanded for a hearing, and (3) if the Chief Judge was without authority to act alone, the proper relief would be a remand to the Court of Special Appeals for a hearing before a panel of that court.

The parents, through MCVRC, also filed an answer to the petition and a conditional cross-petition of their own. We granted Bell's petition and denied the parents' cross-petition.[1]

---

1. Notwithstanding the denial of their cross-petition, the parents, through MCVRC, filed an "Appellee's" brief in this Court and asked for permission to present oral argument, which we denied. Neither the parents nor MCVRC have any standing or authority to file an answer to the petition, a cross-petition, or a brief, or to present argument, either in this Court or in the Court of Special Appeals. They were not parties in the Circuit Court and they are not parties in the appellate courts. Although in some legal systems crime victims are treated as parties to a criminal proceeding and may participate actively in the proceeding, that is not the case throughout most of the United States, and it is clearly not the case in Maryland. *See Lopez–Sanchez v. State,* 388 Md. 214, 224, 879 A.2d 695, 701 (2005); *Cianos v. State,* 338 Md. 406, 410–11, 659 A.2d 291, 293 (1995).

The direction in Art. 47 of the Maryland Declaration of Rights that crime victims be treated with dignity, respect, and sensitivity during all

## DISCUSSION

### Mootness of the Appeal

As noted, most of the courts, whatever their view as to abating all or part of the judgment, seem to agree that, upon the death of the defendant, the pending appellate proceeding should be dismissed as moot. Few, if any, of them discuss why the appellate proceeding is moot; they just hold that it is, usually for no articulated reason other than that other courts have said so. A few courts have concluded, without much discussion, that they lose jurisdiction when the defendant dies. *See State v. Kriechbaum*, 219 Iowa 457, 258 N.W. 110, 113 (1934). We shall reserve comment on the mootness issue for our discussion of the fourth option.

### The Rationales

Two principal rationales have been offered to support the view that, when a defendant dies during the pendency of an appeal of right, the entire criminal proceeding should be abated *ab initio*. The first and predominant one rests on the notion that, when a conviction is appealed, it loses finality until the appeal is resolved and should not be permitted to stand

---

phases of the criminal justice process, though important, does not suffice to give victims party status in criminal cases or, except to the extent expressly provided by statutes enacted by the General Assembly or Rules adopted by this Court, the right to act as though they were parties. Maryland Rule 8–111 defines the parties to an appellate proceeding as being "the party" first appealing the decision of the trial court (appellant) and "the adverse party" (appellee). In criminal cases, absent a special intervention for such limited purposes as enforcing a right of public access (*see News American v. State*, 294 Md. 30, 40–41, 447 A.2d 1264, 1269–70 (1982); *Baltimore Sun v. Colbert*, 323 Md. 290, 593 A.2d 224 (1991)), those parties would be the State and the defendant. The Rule does not afford persons who were not parties in the trial court party status in the appellate court. Maryland Rules 8–302(c) and 8–303(d) make clear that only a party may file a petition for *certiorari* or an answer to such a petition. The proper procedure to be followed by a non-party who wishes to present a point of view to an appellate court is to seek permission to file an *amicus curiae* brief pursuant to Maryland Rule 8–511. The Court of Special Appeals should have stricken the MCVRC's response to Bell's renewed motion to dismiss. We shall strike its answer, cross-petition, and "appellee's" brief.

when the defendant's death prevents the appellate court from adjudicating the validity of the conviction. Courts have expressed this rationale in different ways, but all to the same effect.[2]

The second rationale, as articulated in *United States v. Estate of Parsons*, 367 F.3d 409, 414 (5th Cir.2004), "focuses on the precept that the criminal justice system exists primarily to punish and cannot effectively punish one who has died." Many of the courts adopting the full abatement approach note that justification as well. *See Carver v. State*, 217 Tenn. 482, 398 S.W.2d 719, 720 (1966):

> "One of the cardinal principles and reasons for the existence of criminal law is to punish the guilty for acts contrary to the laws adopted by society. The defendant in this case having died is relieved of all punishment by human hands and the determination of his guilt or innocence is now assumed by the ultimate arbiter of all human affairs."

*See also People v. Valdez*, 911 P.2d 703, 704 (Colo.App.1996); *State v. Holland*, 288 Mont. 164, 955 P.2d 1360, 1361 (1998).

---

**2.** *See*, for example, *People v. Valdez*, 911 P.2d 703, 704 (Colo.App.1996) ("an appeal is an integral part of our system of adjudicating guilt or innocence and defendants who die before the conclusion of their appellate review have not obtained a final adjudication of guilt or innocence"); *United States v. Moehlenkamp*, 557 F.2d 126, 128 (7th Cir.1977) (same); *State v. Hoxsie*, 570 N.W.2d 379, 382 (S.D.1997); *Howell v. United States*, 455 A.2d 1371, 1372 (D.C.1983) ("A judgment of conviction is not considered final until any appeal of right which is filed has been resolved because the possibility of reversal endures until that point"); *State v. Campbell*, 187 Neb. 719, 193 N.W.2d 571, 572 (1972) (same); *State v. Marzilli*, 111 R.I. 392, 303 A.2d 367, 368 (1973) (same); *State v. Morris*, 328 So.2d 65, 67 (La.1976) (interest of defendant's surviving family in preserving reputation of deceased defendant is "of sufficient legal significance to require that a judgment of conviction not be permitted to become a final and definitive judgment of record when its validity or correctness has not been finally determined because the defendant's death has caused a pending appeal to be dismissed"); *United States v. Estate of Parsons*, 367 F.3d 409, 414 (5th Cir.2004) (appeal tests "previously unforeseen weaknesses in the state's case or outright errors at trial" and "[u]nder this rationale, neither the state nor affected parties should enjoy the fruits of an untested conviction").

A slight majority—and an increasingly smaller majority—of the courts that have considered the matter adopt this full abatement approach. Some of the courts allude to one or both of these rationales for their decision; others give no reason other than to follow what other courts have done.

Two rationales have also been offered for the opposite view, of dismissing the appeal but leaving either the entire judgment or at least non-punitive aspects of it, such as compensatory restitution orders, intact (Options 2, 3, and 5). The first responds to the view of the courts favoring the full abatement approach that a conviction is not final until the appeal is resolved. It stresses that (1) a conviction erases the presumption of innocence, and (2) trial court judgments are presumed to be regular and valid. After conviction, a defendant is no longer presumed innocent but, indeed, is presumed guilty. *See McCoy v. Court of Appeals of Wisconsin,* 486 U.S. 429, 436, 108 S.Ct. 1895, 1900, 100 L.Ed.2d 440, 451 (1988) ("After a judgment of conviction has been entered, however, the defendant is no longer protected by the presumption of innocence."); *Herrera v. Collins,* 506 U.S. 390, 399, 113 S.Ct. 853, 859, 122 L.Ed.2d 203, 216 (1993). Convictions therefore *do* have significance and should not be treated as inconsequential simply because the defendant has died. As noted in *Whitehouse v. State,* 266 Ind. 527, 364 N.E.2d 1015, 1016 (1977):

> "The presumption of innocence falls with a guilty verdict. At that point in time, although preserving all of the rights of the defendant to appellate review, for good and sufficient reasons we presume the judgment to be valid, until the contrary is shown. To wipe out such a judgment, for any reason other than a showing of error, would benefit neither party to the litigation and appears to us likely to produce undesirable results in the area of survivor's rights in more instances tha[n] it would avert an injustice."

*See also Wheat v. State,* 907 So.2d 461, 462 (Ala.2005) ("A conviction in the circuit court removes the presumption of innocence, and the pendency of an appeal does not restore that presumption"); *People v. Peters,* 449 Mich. 515, 537 N.W.2d 160, 163 (1995) ("The conviction of a criminal defen-

dant destroys the presumption of innocence regardless of the existence of an appeal of right. We therefore find it inappropriate to abate a criminal conviction"); *State v. Clements*, 668 So.2d 980, 981–82 (Fla.1996) ("[A] judgment of conviction comes for review with a presumption in favor of its regularity or correctness ... We therefore conclude ... that the death of the defendant does not extinguish a presumably correct conviction and restore the presumption of innocence which the conviction overcame").

Although rarely articulated, that view tacitly takes into account and gives credence to two underlying precepts: first, that to obtain the conviction under review, the State was obliged to prove, and presumptively did prove, each element of the offense, including criminal agency, beyond a reasonable doubt, either to an impartial jury selected in accordance with the legal requirements or to a judge who is presumed to know the law; and second, that, at least where the defendant was represented by presumably competent counsel, every challengeable aspect of the State's case was subjected to scrutiny and challenge.

A second concern expressed by courts in this camp arises from the collateral consequences of abating the judgment in its entirety—principally the eradication of restitution orders entered to compensate victims but also, in some instances, court costs, fines, and limitations on inheritance. That rationale was explicated in *State v. Korsen*, 141 Idaho 445, 111 P.3d 130 (2005), where the court observed that, in light of recent legislation requiring that criminals bear the economic burden of their criminal activity, including restitution to compensate their victims, "a criminal conviction and any attendant order requiring payment of court costs and fees, restitution or other sums to the victim, or other similar charges, are not abated, but remain intact"); *United States v. Dudley*, 739 F.2d 175 (4th Cir.1984); *Matter of Estate of Vigliotto*, 178 Ariz. 67, 870 P.2d 1163, 1165 (App.1993).

The courts impressed with this second rationale, of giving effect to legislative efforts mandating compensation to victims

through restitution orders, may differ as to whether the entire judgment should be left intact or only essentially non-punitive compensatory aspects of the judgment, but they are united in opposing the automatic full abatement approach. When joined by those courts that permit the appeal to proceed, which, at least to some extent, is also antithetical to an automatic abatement approach, they may, indeed, represent an equally well-established view disfavoring automatic full abatement.

At least seven States have concluded that the only fair and practical way to resolve the competing concerns or policies is to permit the appeal to proceed, despite the defendant's death, and allow the fate of the judgment to hinge on the result. The courts adopting that approach accept the view of the abatement courts that an appeal of right is an integral part of a defendant's right to a final determination of the merits of the case but also observe that, because of collateral effects of the conviction, including restitution orders, society too has an interest in having a complete review of the merits, once an appeal is noted. This was well explained in *Gollott v. State*, 646 So.2d 1297,1304 (Miss.1994), where, after reviewing the competing points of view and its own prior decisions, the Mississippi court observed:

"Full review is the only way to preserve the presumption that the conviction is valid until overturned on appeal, while simultaneously preserving the vested right of the criminal defendant to his appeal. This rule also protects society, third parties, and the decedent's estate from being subjected to the force of a hollow conviction—one that remains a presumption for having not been fully adjudicated."

*See also State v. Makaila*, 79 Hawai'i 40, 897 P.2d 967 (1995); *State v. Jones*, 220 Kan. 136, 551 P.2d 801 (1976); *State v. Salazar*, 123 N.M. 778, 945 P.2d 996 (1997); *State v. McGettrick*, 31 Ohio St.3d 138, 509 N.E.2d 378, 381 (1987) ("It is in the interest of the defendant, the defendant's estate and society that any challenge initiated by a defendant to the regularity of a criminal proceeding be fully reviewed and decided by the appellate process"); *Commonwealth v. Walker*,

447 Pa. 146, 288 A.2d 741, 742, n. 1 (1972); *Commonwealth v. Bizzaro,* 370 Pa.Super. 21, 535 A.2d 1130 (1987); *State v. McDonald,* 144 Wis.2d 531, 424 N.W.2d 411, 414 (1988).

Obviously, those courts do not accept the assumed but unexplained, blanket notion that the appeal automatically becomes moot upon the defendant's death and must, for that reason, be dismissed.

■ There are at least two possible reasons to consider the appeal as moot when the defendant-appellant dies. One is that there is no one to pursue it. That is more obviously the case, of course, in the extremely rare circumstance, at least in Maryland, where the appellant is appearing *pro se.* Even, as is almost always the case in the Maryland appellate courts, the defendant is represented by counsel, the defendant's death, as a matter of agency law, would ordinarily terminate the lawyer-client relationship and, with that termination, the authority of the erstwhile agent to continue to act for the defendant. *See Brantley v. Fallston Hospital,* 333 Md. 507, 511, 636 A.2d 444, 446 (1994); *Switkes v. John McShain,* 202 Md. 340, 348, 96 A.2d 617, 621 (1953). In *Brantley,* quoting, in part from *Switkes,* we observed:

> "Ordinarily, under well-established principles of agency law, an agent's authority terminates upon the death of the principal ... The lawyer-client relationship is not excepted from this rule ... Thus, we have specifically held that an attorney has no authority to note an appeal on behalf of a client who has died."

If, because of the termination of the agency relationship, the lawyer has no authority to note an appeal on behalf of a client who has died, that termination would presumably abrogate as well any authority, which exists solely by virtue of the agency relationship, to continue an appeal already noted. That conclusion, which ordinarily would follow from the straightforward application of principles of agency law, does not fit so well in this context, however, for, if we were faithfully to apply that notion, counsel in these cases would have had no authority to move for dismissal of the appeal (and certainly no

authority, in Bell's case, to file a petition for *certiorari* ) or to present written or oral argument on behalf of their dead clients. Although we have never applied the Rule in this context, we do note Maryland Rule 1–331:

> Unless otherwise expressly provided and when permitted by law, a party's attorney may perform any act required or permitted by these rules to be performed by that party. When any notice is to be given by or to a party, the notice may be given by or to the attorney for that party."

We shall not address here whether, if counsel's authority to file motions and petitions and appear and present argument on behalf of a dead client rests on Rule 1–331, that Rule may also provide authority as well to pursue on the client's behalf an appeal previously noted by the client.[3]

In civil cases, if a party dies during the pendency of an appeal, the Rules provide for the appointment or naming of a substitute party, usually a personal representative, to carry on the appeal. *See* Maryland Rules 8–401 and 2–241. Rule 1–203(d) complements that right by automatically suspending all time requirements applicable to the deceased party from the date of death to the earlier of sixty days after death or fifteen days after the appointment of a personal representative by a court of competent jurisdiction.

Although there are some distinctions in this regard between civil and criminal appeals, Rule 1–203(d) applies to civil and criminal proceedings, in both the trial and appellate courts,

---

**3.** As a practical matter, the role that the client plays in criminal appeals is very limited. The defendant-appellant can always choose to dismiss the appeal, of course, but that seldom, if ever, happens, and if it does, the judgment will remain intact. In the early stages of an appeal, the defendant may be able to assist his or her attorney in selecting the issues to raise, and occasionally, but rarely, represented defendants will file a *pro se* brief in the Court of Special Appeals. Once the briefs are filed, however, the defendant's role is a minuscule one. The defendant is rarely in court when the case is argued, and, in the Court of Special Appeals, many of the criminal appeals are submitted on brief in any event; there is no oral argument. Other than electing to dismiss the appeal, once the briefs have been filed, there is little or nothing that the defendant can do to influence the decision.

and most of the courts that have opted to allow a criminal appeal to continue have invoked their analogues to Rules 8–401 and 2–241 and permitted a personal representative or other proper person to stand in the shoes of the appellant. *See State v. McGettrick, supra,* 31 Ohio St.3d 138, 509 N.E.2d 378; *Gollott v. State, supra,* 646 So.2d 1297; *State v. Makaila supra,* 79 Hawai'i 40, 897 P.2d 967. In *State v. Salazar, supra,* 123 N.M. 778, 945 P.2d 996, the court appointed defense counsel as the substituted party for purposes of pursuing the appeal. The *McGettrick* and *Gollott* courts (Ohio and Mississippi) did not opt for an automatic continuance of the appeal but instead allowed some time to determine whether either the defendant's estate *or the State* desired to have the appeal continue and, if so, to designate a personal representative as a substituted party. Under their approach, if a substituted party is not named within the time allowed, the appeal is dismissed and all proceedings are abated *ab initio.* Abatement is regarded as a "default."

A second reason why the appellate proceeding may be regarded as moot when the appellant dies is because there is often, though not always, no effective relief that the appellate court can provide. If there is no collectible fine, judgment for court costs, or restitution order and no inheritance rights are affected by the conviction, neither affirmance nor reversal (nor modification) of the judgment will have any practical effect. If affirmed, the judgment cannot be executed; a dead defendant obviously cannot be imprisoned or made to satisfy conditions of probation. If reversed, there can be no retrial and no practical benefit to the defendant. Only where the appellate decision may affect the prospect of collecting from the defendant's estate or property a fine, costs, or restitution or nullify some impediment to inheritance can there be said to be possible effective relief that the court could provide. If, in a given case, the appellate decision *could* affect the continuing vitality of that aspect of the judgment, the appellate proceeding may not be moot for want of an ability to provide effective relief.

### Existing Maryland Law

The question of what to do when a defendant in a criminal case dies while an appeal of right is pending has been before this Court on a number of occasions. It first surfaced in *Frank v. State*, 189 Md. 591, 596, 56 A.2d 810, 812 (1948), where two defendants were convicted of bookmaking and appealed. One of the defendants, Frank, died while the appeal was pending. The Court found error in the admission of unlawfully seized evidence and, as to the other defendant, reversed and awarded a new trial. As to Frank, the Court said only "his case abates" and "[h]is appeal will therefore be dismissed." The mandate was "Judgment reversed as to David Mazor, and a new trial awarded. Appeal dismissed as to Ben Frank." In that case, of course, there could be no retrial of Frank in any event, so abatement was simply a recognition of reality. In announcing that result, the Court cited *List v. Pennsylvania*, 131 U.S. 396, 9 S.Ct. 794, 33 L.Ed. 222 (1888) and *Menken v. Atlanta*, 131 U.S. 405, 9 S.Ct. 794, 33 L.Ed. 221 (1889), both criminal cases in which the appellant died while appeals were pending before the Supreme Court on writ of error, in which the Court, when apprised of the death, stated that the cause "has abated" and dismissed the writ of error.

The issue arose again in *Porter v. State*, 293 Md. 330, 444 A.2d 50 (1982) and *Thomas v. State*, 294 Md. 625, 451 A.2d 929 (1982). In both cases, the appellant died after his conviction had been affirmed by the Court of Special Appeals and while the matter was pending in this Court following the grant of *certiorari*. On consent motions, in one case filed by the State and in the other by defense counsel, in which both sides stipulated that the convictions should be vacated and the indictments dismissed as moot, this Court granted that relief.

In *Jones v. State*, 302 Md. 153, 486 A.2d 184 (1985), however, where that issue was contested, we declined to follow *Porter* and *Thomas* and instead adopted the Supreme Court's view in *Dove v. United States, supra*, 423 U.S. 325, 96 S.Ct. 579, 46 L.Ed.2d 531, that, when the death occurs following an affirmance of the conviction and while the matter is pending

discretionary review, the proper response is simply to dismiss the appellate proceeding as moot and allow the trial court judgment, as affirmed, to stand. When *Jones* was decided, the clear majority rule, in both the Federal and State courts, was that, when death occurs during the pendency of an appeal of right, the entire criminal proceeding should be abated. Many of the cases departing from that view had not yet been decided; only two, *State v. Morris, supra,* 328 So.2d 65, and *Whitehouse v. State, supra,* 266 Ind. 527, 364 N.E.2d 1015, were even mentioned, in a footnote, 302 Md. at 157, n. 1, 486 A.2d at 186, n. 1. After reviewing the cases distinguishing appeals of right from cases pending discretionary review, the Court announced its agreement with that distinction and observed:

"Where the deceased criminal defendant has not had the one appeal to which he is statutorily entitled, it may not be fair to let his conviction stand. But, on the other hand, where the right of appeal has been accorded and the Court of Special Appeals has decided that there was no reversible error, no unfairness results in leaving the conviction intact even though an application for further review has not been resolved when the defendant dies. The mere possibility that this Court might have reversed the conviction is not sufficient ground to order dismissal of the entire indictment."

*Id.* at 158, 486 A.2d at 187.

In *Russell v. State,* 310 Md. 96, 527 A.2d 34 (1987), the issue arose in a different context. After a verdict of guilty was returned, the trial court granted the defendant's motion for new trial. The defendant then moved to dismiss the indictment, contending that the grant of a new trial amounted to a determination that the evidence presented at the first trial was legally insufficient and a retrial would constitute placing him in double jeopardy. That motion was denied, an appeal was taken, the Court of Special Appeals affirmed, this Court granted *certiorari,* and the defendant died while the case was pending here. Distinguishing *Jones,* we concluded that there had never been a judgment of conviction and that, when

Russell died, his status was that of a defendant awaiting trial. Without citing any authority, the Court stated that "[w]here the accused dies while awaiting prosecution *or while a direct appeal is pending,* the prosecution will abate, and if there has been a conviction it will be abated." (Emphasis added). The italicized language is, of course, relevant in these appeals, although it was obviously *dicta* in *Russell.*

The case that clearly places Maryland in the abatement camp is *Trindle v. State,* 326 Md. 25, 602 A.2d 1232 (1992). Trindle was convicted in Circuit Court and appealed to the Court of Special Appeals. As is the case with Surland, we granted *certiorari* prior to any decision by the intermediate appellate court and Trindle died while the case was pending here. Noting that fact and citing only *Jones,* which was not directly on point, we held that "all issues [Trindle] had raised are moot" and that, as he had not had the one appeal to which he was entitled, "his convictions and sentences shall be vacated, and the cases remanded with directions to dismiss the criminal informations filed against him as moot." *Id.* at 30, 602 A.2d at 1234. The question now before us is whether to overrule that aspect of *Trindle* and adopt a different approach.

### Conclusion

Although the holding in *Trindle* is certainly precedent, this is the first time that this Court has really examined the different approaches and competing policies in the light of the current landscape, a landscape that is not entirely the same as it was when *Jones* and *Trindle* were decided. We are convinced that neither of the two rigid polar approaches—automatic abatement of the entire criminal proceeding *ab initio* or dismissing the appeal and leaving the judgment intact without any prospect of critical review—constitutes a proper balance of equally important concerns. The former disregards entirely the presumptive validity of the conviction, which, for the reasons already noted, should not be so casually ignored.[4] On

---

4. The presumption of validity, which is a legal precept, is consistently confirmed empirically. The most recent Annual Reports of the Mary-

the other hand, whether or not a conviction should be regarded as non-final once an appeal is filed, as the abatement *ab initio* courts seem to assume, it certainly is subject to reversal, vacation, or modification if the appellate court finds merit in any of the challenges made by the appellant, and, despite the low rate of actual success on direct appeal, the court should not dismiss that possibility out of hand.

Because, in Maryland, fines and costs are part of the criminal judgment, as is restitution (*see Grey v. Allstate,* 363 Md. 445, 769 A.2d 891 (2001)), we can find no justifiable basis in Maryland law for the third approach, of parsing the judgment of conviction, vacating certain parts but not others. If either of the rationales for abatement *ab initio* are to prevail, the entire judgment must be vacated.

We concur, in part, with those courts that permit the appeal to continue, if the defendant's estate wishes it to continue. We do not agree that *the State* should be empowered to have a substituted party appointed for the defendant, however, and, by that device, cause the defendant's appeal to continue when the defendant's estate does not wish it so. In furtherance of that view, we do not agree that abatement *ab initio* should be the default. That, in our view, is not at all the proper balance; indeed, there would be little or no incentive for the defendant's estate to opt to continue the appeal if, by not doing so, there will be a full abatement. The presumption that the judgment of conviction is valid should permit it to remain in effect unless, at the *defendant's* election, exercised by a substituted party appointed by the defendant's estate for the defendant's benefit, the appeal continues and results in a reversal, vacation, or modification of the judgment.

---

land Judiciary (FY 2001 through 2004) show that only nine to fourteen percent of the criminal appeals to the Court of Special Appeals result in reversals, either in whole or in part—that 64% to 67% of the judgments are affirmed, 13% to 18% of the appeals are dismissed, and 4% to 9% result in some other disposition. The success rate in appeals of right is quite low. Indeed, ironically, the reversal rate is much higher in this Court on *certiorari* review—between 38% and 60% in the same four-year period—yet, if the defendant dies while the case is pending in this Court, the judgment will remain intact.

■ We opt for the following: Upon notice of the death of the appellant and in conformance with Md. Rule 1–203(d), all time requirements applicable to the deceased defendant and the setting of the case for argument (if that has not already occurred) will be automatically suspended in order to allow a substituted party (1) to be appointed by the defendant's estate, and (2) to elect whether to pursue the appeal. If a substituted party is appointed and elects to continue the appeal, counsel of record will remain in the case, unless the substituted party, contemporaneously with the election, obtains other counsel. If no substituted party comes forth within the time allotted by Rule 1–203(d) and elects to continue the appeal, it will be dismissed, not for mootness but for want of prosecution, and, as with any appeal that is dismissed, the judgment will remain intact.

Although none of the various approaches is perfect, this one, it seems to us, comes the closest. It preserves both the presumptive validity of the judgment and the ability of the defendant, through a substituted party appointed for his or her benefit, to maintain the defendant's challenge to it. It protects the interests of both parties and of the public generally and, because there are so very few instances in which the problem arises, should create no appreciable burden for anyone.[5] No matter which approach is taken, the defendant, who is dead, can suffer no further punishment and reap no further reward, whether the judgment is vacated or not. If the defendant's survivors wish to pursue the appeal, to preserve the defendant's estate against a claim for some fine, costs, or restitution, to clear the defendant's record and reputation, or to vindicate some legal principle that was important to the defendant, they should be free to do so in place of the defendant, who would have maintained the appeal had he or she survived. *If no substituted party wishes to proceed, no*

---

**5.** Although a substituted party obviously cannot be subjected personally to any punitive or monetary aspect of the judgment of conviction rendered against the defendant, that party may become liable for appellate court costs, as the defendant would have, if the judgment is affirmed and the appellate court assesses costs in the normal manner.

*one is hurt if the appeal is dismissed and the judgment remains intact, as it would with any dismissal.* Because counsel, whether private counsel or the Public Defender, is usually already in the case and, but for the appellant's death, would be obliged to see it through, we see no reason why, unless a substituted party obtains other counsel, counsel already of record should not continue to prosecute the appeal, as they were employed or appointed to do.

IN *SURLAND,* NO. 8, MOTION TO VACATE CONVICTION AND SENTENCE AND REMAND FOR DISMISSAL OF INDICTMENT DENIED; CASE TO BE CONTINUED FOR 60 DAYS; IF WITHIN THAT PERIOD SUBSTITUTED PARTY IS DULY APPOINTED AND ELECTS TO PROCEED WITH APPEAL, CASE WILL BE RE-SET FOR ARGUMENT ON THE MERITS; OTHERWISE, APPEAL WILL BE DISMISSED AS OF COURSE, COSTS TO BE PAID BY PUBLIC DEFENDER.

IN *BELL,* NO. 45, JUDGMENT OF COURT OF SPECIAL APPEALS VACATED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO CONTINUE CASE FOR 60 DAYS; IF WITHIN THAT PERIOD SUBSTITUTED PARTY IS DULY APPOINTED AND ELECTS TO PROCEED WITH APPEAL, CASE SHALL BE SET FOR ARGUMENT ON THE MERITS; OTHERWISE, APPEAL TO BE DISMISSED, COSTS TO BE PAID BY PUBLIC DEFENDER.

BELL, C.J., CATHELL and GREENE, JJ., dissent.

Dissenting Opinion by GREENE, J., which BELL, C.J., and CATHELL, J., Join.

Respectfully, I dissent:

The majority seems to acknowledge that, for more than fifty-seven years, the law in Maryland has been that if the a defendant dies during the pendency of an appeal of right, as opposed to a discretionary appeal, the appeal is dismissed as moot, the conviction is vacated and the underlying indictment,

as well, is dismissed as moot. *Trindle v. State,* 326 Md. 25, 602 A.2d 1232 (1992); *Jones v. State,* 302 Md. 153, 158, 486 A.2d 184, 187 (1985) (noting that it is unfair to let a conviction stand "[w]here the deceased criminal defendant has not had the one appeal to which he is statutorily entitled ..."); *Russell v. State,* 310 Md. 96, 527 A.2d 34 (1987); *Frank v. State,* 189 Md. 591, 56 A.2d 810 (1948). Further, the majority points out that, because the defendant's appeal is dismissed as moot, it may not be fair and in the interest of justice to let his conviction stand.

The rule followed by the majority of state and federal jurisdictions is that when a criminal defendant files an appeal of right and dies pending the appeal of his or her conviction, the appeal is dismissed and the prosecution abates *ab initio.* *See* Tim A. Thomas, *Abatement of State Criminal Case by Accused's Death Pending Appeal of Conviction—Modern Cases,* 80 A.L.R.4th 189 (1990) (for a collection of the states following this majority rule). *See also United States v. Moeh-lenkamp,* 557 F.2d 126, 128 (7th Cir.1977) (explaining that the interests of justice require that the conviction not stand without determination of the merits of an appeal).

In my view, because petitioners, Surland and Bell, filed appeals of right that were undecided at the time of their deaths, their convictions were not entitled to any degree of finality as a matter of law. Pursuant to Maryland statutory law, both defendants were entitled, as a matter of right, to appeal their convictions. See Md.Code (1974, 2002 Repl.Vol.), § 12–301 of the Courts and Judicial Proceedings Article. In the interests of justice their convictions should not stand without a resolution of the merits of their appeals and any resolution is impossible by virtue of their deaths. See *People v. Matteson,* 75 N.Y.2d 745, 551 N.Y.S.2d 890, 551 N.E.2d 91, 92 (1989) (holding that a defendant's suicide while his appeal of right was pending abates the appeal and all proceedings in the prosecution from its inception because "[t]he death places a defendant beyond the court's power to enforce or reverse the judgment of conviction, thereby preventing effective appellate review of the validity of the conviction") (citations omit-

ted).   A majority of the federal courts of appeal have conclud-
ed that an appeal of right is an integral part of the system for
adjudicating guilt or innocence, and if a defendant dies before
appellate review is completed, the defendant has not obtained
final adjudication of the appeal.   See *United States v. Pogue*,
19 F.3d 663, 665 (D.C.Cir.1994) (recognizing the holdings of
the Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth,
Tenth, and Eleventh Circuits affirming that abatement *ab
initio* is the law).   The universal rationale for holding that
death abates all proceedings in the prosecution from its incep-
tion seems to be that "the interests of justice ordinarily
require that ... [a defendant] not stand convicted without
resolution of the merits of his appeal, which is an "integral
part of [our] system for finally adjudicating [his] guilt or
innocence."   *U.S. v. Moehlenkamp*, 557 F.2d 126, 128 (7th
Cir.1977) (citing *Griffin v. Illinois*, 351 U.S. 12, 18, 76 S.Ct.
585, 590, 100 L.Ed. 891 (1956)).

Recently, the Supreme Court of Alabama applied the abate-
ment rule to a case involving the death of a criminal defendant
occurring during the course of an appeal of right.   The court
held that the defendant's conviction abated upon his death.
*Ex parte Estate of Cook*, 848 So.2d 916 (Ala.2002).[1]   The
Supreme Court of Alabama acknowledged that states have
provided various policy reasons in support of the abatement
rule:

> Our review of the jurisprudence of other states shows that a
> majority follow this same rule, and some have provided

---

1.   In *Cook*, the defendant died while in the course of his appeal *de novo*
to the circuit court.   Subsequently, in *Wheat v. State*, 907 So.2d 461
(Ala.2005) the Alabama Supreme Court distinguished the facts in *Cook*
and held that where the defendant died, while an appeal was pending
in the appellate court, death abates the appeal.   On remand, the court
in *Wheat* directed the trial court to note in the record the fact of the
defendant's conviction, and that the conviction was appealed, but it was
neither affirmed nor reversed.   In *Wheat*, the court applied Ala. Rule
43(a), which was not applicable in *Cook*, to resolve the issue of abate-
ment on a case by case basis.   Rule 43(a) provides that "when the death
of a party has been suggested, the proceeding *shall not abate*, but shall
continue or be disposed of as the appellate court may direct."   *Wheat*,
907 So.2d at 464 (Harwood, J. concurring).

compelling policy reasons in support thereof. *See People v. Robinson*, 187 Ill.2d 461, 241 Ill.Dec. 533, 719 N.E.2d 662, 663 (1999) ("the purpose of criminal prosecutions is to punish the defendant; continuing criminal proceedings when the defendant is dead is a useless act"); *State v. Holland*, 288 Mont. 164, 955 P.2d 1360, 1362 (1998) (adopting rationale for abating criminal proceeding upon defendant's death set forth by the Arizona Supreme Court "that the interests of the state in protecting society have been satisfied, the imposition of punishment is impossible, and further collection of fines or forfeiture would result in punishing innocent third parties"); *State v. Hoxsie*, 570 N.W.2d 379, 382 (S.D.1997) ("Mere dismissal of the appeal, without abatement of the proceedings *ab initio*, would permit a judgment to stand that is not final."); *Gollott v. State*, 646 So.2d 1297, 1300 (Miss.1994) ("What is obvious is that society needs no protection from the deceased. . . . Moreover, other potential criminals will be no less deterred from committing crimes. In the abatement *ab initio* scheme, the judgment is vacated and the indictment is dismissed, but only because the convicted defendant died. Surely this would not give peace of mind to the criminally inclined."); *State v. McClow*, 395 So.2d 757, 758 (La.1981) (abatement has as its purpose "serving the interest of the surviving family in preserving, unstained, the memory of the deceased defendant or his reputation"); *State v. Griffin*, 121 Ariz. 538, 592 P.2d 372 (1979) (rational adopted in *State v. Holland, supra* ); *State v. Carter*, 299 A.2d 891, 895 (Me.1973) ("By such principle of abatement, *ab initio*, there is avoided, likewise, danger of any potential collateral carry-over to affect personal or property rights of survivors of the deceased defendant or other persons.").

*Ex parte Cook*, 848 So.2d at 918–19 (parallel citations omitted) (footnote omitted).

Presumably, because an appeal is an integral part of our criminal justice sysℴm, the majority appears motivated to overrule *Trindle*, and its progeny, and hold that a defendant's appeal continues even after death. This approach has been criticized by at least one jurist as a court, apparently, seeking

to extend its grasp over criminal defendants beyond the grave, i.e., "from here to eternity." *State v. McDonald,* 144 Wis.2d 531, 424 N.W.2d 411, 416 (1988) (Day, J. dissenting) (recognizing that death ended the appellate court's jurisdiction over the criminal defendant and that allowing the appeal to continue after his death will not vindicate the defendant). In that case, a majority of the Supreme Court of Wisconsin held that the appropriate remedy when a defendant dies "while pursing postconviction relief" is not to abate the criminal proceedings *ab initio* but to allow the appeal to continue regardless of the cause of the defendant's death because the defendant is entitled to a final resolution of his appeal. *McDonald,* 424 N.W.2d at 414–415.

In support of its holding in the present case, the majority advances the following reasons to justify changing the law: it is in the interests of justice and protects the interests of the public to continue the appeal after the defendant's death; the decedent or those who survive him should have the opportunity for "vindication" by allowing the appeal to go forward; the conviction appealed from is presumptively valid; abatement *ab initio* should not be the default; and the Court should not dismiss the possibility, out of hand, that the defendant's conviction on appeal might be reversed, vacated, or modified. Yet, in the same context, the majority acknowledges that the defendant "can suffer no further punishment and reap no reward, whether judgment is vacated or not," it is willing to permit the "defendant, through a substituted party appointed for his or her benefit, to maintain the defendant's challenge to . . . [the judgment]." Maj. op. at 36, 895 A.2d at 1045.

It is not clear to me the specific societal interests that the majority deems are in need of protection. If the real interests that the majority seeks to protect are the interests of victims and witnesses, then, in my view, the Legislature is better able to craft a rule than this Court to address the "rights" of all victims and witnesses. If, however, the majority is alluding to the public's trust and confidence in the criminal justice system, it seems to me that the public would tend to have less confidence in a system that creates a fiction allowing the

defendant to continue to pursue an appeal from the grave while not allowing victims of crimes to pursue any postmortem remedies in the criminal case.

The reality is, and should be, that death terminates the appeal. Even if the conviction is upheld or reversed after the defendant's death, it is of no benefit or detriment to the defendant who is dead or to those who cherish his or her memory. For example, assume it is determined on appeal that "an error occurred in the trial warranting a new trial. Does that 'vindicate' the de[fendant]? Hardly. There [will] not ... be a determination that the de[fendant] was 'not guilty.' The issue will never be retried [,]" and the deceased could never be vindicated or found not guilty. *McDonald*, 424 N.W.2d. at 416 (Day, J. dissenting). It is better for all concerned to recognize that the matter is moot because the defendant, upon death, can suffer no further punishment and reap no reward, whether judgment is vacated or not. In my view, there is no legitimate purpose to be served in permitting the appeal to continue after the defendant's death.

In other words, when the defendant dies pending his appeal the appeal should be dismissed as moot because the defendant is no longer subject to the jurisdiction of the court. When a defendant dies, the State's interest in the "protection of society ha[s] been satisfied, the imposition of punishment is impossible, and [the] collection of fines or forfeiture [will] result in [the] punish[ment of] innocent third parties." *Griffin*, 592 P.2d at 373. Further, "[w]hen a financial penalty is imposed upon a defendant, it is unfair to punish defendant's family by making the family pay the defendant's fine by virtue of an assessment against the estate." *McDonald*, 424 N.W.2d at 413 (discussing concurring opinion by J. Sundby in *State v. Krysheski*, 119 Wis.2d 84, 349 N.W.2d 729, 731 (1984)); *People v. Mazzone*, 74 Ill.2d 44, 23 Ill.Dec. 76, 383 N.E.2d 947, 949 (1978) (holding that a fine imposed as punishment on the defendant, and there is a pending appeal, upon his death there is no justice in punishing his survivors for his offense). An appeal automatically becomes moot upon the defendant's death because the defendant is not available to pursue the

appeal and often there is no effective relief that the appellate court can provide. *See Mazzone,* 23 Ill.Dec. 76, 383 N.E.2d at 950. The court in *Robinson,* upholding *Mazzone,* reaffirmed that "the purpose of criminal prosecutions is to punish the defendant; that to continue criminal proceedings when the defendant is dead is a useless act," *Robinson,* 241 Ill.Dec. 533, 719 N.E.2d at 663 (citing *Mazzone, supra* ) and that "[o]nce the defendant has ceased to be, an appeal cannot effectively confer vindication or impose punishment." *Mazzone,* 23 Ill. Dec. 76, 383 N.E.2d at 949. Further, the court in *Robinson* held that the interests of victims and witnesses are immaterial to abatement *ab initio* unless the Legislature deems otherwise. *See Robinson,* 241 Ill.Dec. 533, 719 N.E.2d at 663–64.

The circumstances surrounding the Bell and Surland appeals do not warrant a modification of Maryland law. It serves no meaningful purpose to decide an appeal after the defendant's death in a criminal case. Substituting a party to act on behalf of the defendant will unnecessarily complicate the resolution of the case. The primary objectives of a criminal prosecution resulting in a conviction and punishment are: (1) to protect society and imprison the guilty and dangerous defendant; (2) to deter the criminal defendant and potential criminals from performing similar conduct; (3) to rehabilitate the criminal defendant; and (4) to obtain retribution from the criminal defendant as a means of satisfying society's sense of revenge. Application of the rule of abatement *ab initio* is consistent with these objectives; however to allow a substituted party, appointed after the defendant's death, to maintain the defendant's challenge to the judgment is remarkably inconsistent with the primary objectives of the criminal justice system and should not be allowed. Therefore, I dissent. I would reverse the judgment of the Court of Special Appeals in *Bell* and remand the case with instructions to abate the conviction *ab initio.* In addition, I would grant the motion in the *Surland* case and remand the matter with directions to abate the conviction *ab initio.*

Chief Judge BELL and Judge CATHELL have authorized me to say that they join in this dissent.