PATRICK O'SULLIVAN

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa, October* 31, 1892.

1.   PRACTICE IN THE SUPREME COURT — *entry of judgment nunc pro tunc, after party's death.*   This court has the power of causing its judgments to be entered of record in cases pending therein, after the death of a party to the record, subsequent to the submission for decision, as of a day before his death, when the delay in causing judgment to be entered has been purely for the convenience of the court or of some of its members.

2.   WRIT OF ERROR — *when it does not abate by party's death.*   The common law rule, that a writ of error does not abate by the death of the plaintiff in error after error joined, has no application to criminal cases, as the rule rests upon the right of the defendant in error to have the judgment revived against the personal representatives of the plaintiff in error, and to thus enforce the judgment against him whom they represent.

3.   There is no right to prosecute a writ of error in any case unless it is affirmatively given, either by a rule of the common law or a statutory

enactment. Our statute in relation to the prosecution of writs of error by executors and administrators has application to judgments in civil cases only.

4. Same — *abatement by death.* The death of a party convicted of crime, after he has sued out a writ of error to reverse the judgment, abates the writ, even though there is joinder in error; and this result can not be prevented by the entry of judgment, *nunc pro tunc,* as of a date prior to his death.

Writ of Error to the Criminal Court of Cook county; the Hon. S. P. McConnell, Judge, presiding.

Mr. William S. Forrest, Mr. Russell M. Wing, Daniel Donahoe and Mr. John A. Qualey, for the plaintiff in error.

Mr. George Hunt, Attorney General, and Mr. J. M. Long-enecker, State's Attorney, for the People.

Per Curiam: Patrick O'Sullivan and others were convicted, in the Criminal Court of Cook county, of the crime of murder and sentenced to be punished therefor by confinement in the penitentiary. He sued out of this court a writ of error upon the record. Errors were assigned on his behalf upon that record, and there was joinder in error by the Attorney General, and the questions thus presented were discussed in printed arguments presented to us at our March term, 1891. But the record being unusually voluminous, and the questions discussed numerous and requiring for their examination and solution the careful reading of hundreds of printed pages of evidence and many legal authorities, it was impossible for us to give judgment thereon at that term, and so we then took the case under advisement. It is now made known to us that on the 5th day of May, 1892, and before we had caused judgment to be entered upon the record, or in any manner indicated to the parties or the public what our judgment would be, Patrick O'Sullivan died intestate, leaving personal property which has been administered upon pursuant to law. It has been suggested to us by one of the attorneys representing O'Sullivan

in his lifetime, as *amicus curiæ*, that we now cause judgment to be entered in the case, *nunc pro tunc,* as of our March term, 1891, or as of some day subsequently, but before the death of O'Sullivan; and the administrator of O'Sullivan's estate, by his attorneys, makes a motion to that effect.

We do not question either our power or the propriety of our causing judgments to be entered of record in cases pending before us, after the death of a party to the record, subsequent to the submission of the case to us for decision, as of a day before his death, where the delay in causing judgment to be entered has been purely for the convenience of the court or of some of its members, and in certain other cases, where injustice will otherwise result to one or both of the parties to the record, provided the judgment thus to be entered of record can be operative and effective, as a judgment, from the day as of which it is entered. But no case has been cited to us which holds that a judgment should be entered *nunc pro tunc,* when it can be no more operative and effective than where it is entered of record as of a present date, and since a court is never required to do a useless act, we do not think that any well-reasoned case so holding can be found.

Judgments in civil cases, whether in actions upon contracts or upon torts, are for the recovery or the denial of something, either specifically or in the form of damage, of some pecuniary value. If the plaintiff recovers he thereby becomes entitled to have, and the defendant must lose, something which, but for that recovery, he would not have had and the defendant would not have lost. But in criminal cases, under indictments for felonies, the sole purpose of the action is, not to give the people anything, but to punish the defendant in his person, and the primary judgment, when the defendant is found guilty, is simply the defendant being found guilty, that he be punished, specifying how. It is true that, under our statute, judgment is also rendered for costs, but this is incidental only, and it stands or falls with the primary judgment that the de-

fendant be punished. The inquiry upon the trial is only whether the defendant be guilty and, if guilty, the punishment that shall be inflicted upon his person, the question of costs being neither submitted nor considered, and the judgment therefor resulting solely as a legal consequence of the primary judgment. It is, therefore, apparent that in judgments in civil cases property rights are more or less directly affected, and such rights, under statutes, are made to descend to and be obligatory upon the representatives after death of either or all of the parties to the judgment. But in criminal cases, where judgments are rendered against the defendants under indictment for felony, the people acquire no property rights, and the representatives of the defendant do not take that which is affected by the primary judgment, namely, the person of the defendant.

It would, therefore, seem to inevitably follow that the common law rule in civil cases, that a writ of error does not abate by the death of the plaintiff in error, after error joined (2 Tidd's Practice, 1086), can have no application to criminal cases, since that rule rests upon the right of the defendant in error to have the judgment revived against the personal representatives of the plaintiff in error, and to thus enforce against them the judgment against him whom they represent.

The only instance found in the books in which a writ of error can, at common law, be prosecuted by the representatives of a deceased person, upon the record of his conviction in a criminal case, is that of an attainder for treason or felony. The effect of such attainder, at common law, was forfeiture of all estate, both real and personal, and corruption of blood. 4 Blackstone's Commentaries, 382. And it was held that a writ of error may be brought by the party attainted, " or, after his death, by his heirs or executors, to reverse an attainder of treason or felony, but by no other persons, whatever interest they may claim in the reversal." 1 Chitty's Criminal Law, 746, *747. But since our constitution provides that "no convic-

tion shall work corruption of blood or forfeiture of estate" (Const., art. 2, sec. 11), there can be no attainder for treason or felony here, and, hence, no case upon which the heir or executor can prosecute a writ of error to reverse an attainder. The principle, upon which the heir or executor was allowed to prosecute a writ of error to reverse the attainder, was that the direct effect of the attainder was to take from them and give to the government property belonging to them, as representatives of the person attainted. And so it is said by Bishop, in his work on Criminal Procedure, vol. 1, sec. 1363, after quoting from Chitty's Criminal Law what we have quoted *supra:* "As the rights of the heir and the executor grew out of their interest in the forfeited estate, we may presume that they could not bring a writ of error with us, where forfeiture is unknown, the rule being to permit it only to 'him who would have had the thing if the erroneous judgment had not been given.'" Citing, in support of the language marked by him with quotation points, as last above, 2 Williams' Saunders, 5th ed. 46, note c.

There can nowhere be found affirmative authority, in the common law, for the prosecution of a writ of error by the representatives of a deceased person, upon a judgment rendered against the deceased in his lifetime, under an indictment for felony, in any other instance, and when it is reflected that at common law no motion could be made nor judgment rendered on such writ of error, in the absence of the plaintiff in error (1 Chitty's Criminal Law, 751, *752), it is manifest that it was impossible that there could have been such prosecution of a writ of error. True, we hold that in this State, under our statute, it is not required, nor, indeed, practicable, that the plaintiff in error in a criminal case shall be personally present in this court when the case is being prosecuted and heard. *Fielden et al.* v. *The People,* 128 Ill. 595. But no statute of this State assumes to supplement or change the rule of the common law by allowing that writs of error may be prosecuted

in criminal cases by representatives of deceased persons where that could not be done at common law.

There is no right to prosecute a writ of error in any case, unless it is affirmatively given, either by a rule of common law or a statutory enactment. Such common law rule or statutory enactment is not pointed out in the present case. On the contrary, in *Herrington* v. *The State*, 53 Ga. 552, we have a case, as stated by the reporter, precisely analogous to the present case, in which the right of the representative of a deceased person to prosecute a writ of error upon the record of a judgment in a criminal case against such deceased person is denied. The reporter states the decision thus: " Where, after the argument of a criminal case in this court " (*i. e.*, the Supreme Court of Georgia), "but before the judgment is pronounced, the defendant dies, the proceedings abate and no decision will be pronounced." Nor can it be said the common law rule does not extend thus far, simply because at common law there was no judgment for costs, to be paid out of the estate of the defendant — for fines for misdemeanors were, at common law, collectible out of the estate of the defendant, and a *levari facias* would issue for their collection (1 Chitty's Criminal Law, 809, * 810), and, upon the death of the defendant, the executor or administrator was chargeable with their payment out of assets of the deceased in his hands for administration. 2 Williams on Executors (7th ed.), 1740. And yet we have hunted in vain for authority, common law or statutory, for an executor or administrator of a deceased person convicted and fined for a misdemeanor, in his lifetime, to prosecute a writ of error upon the record of such conviction.

Our statute, in relation to the prosecution of writs of error by executors and administrators, has application to judgments in civil cases only. Chap. 3, R. S., 1874, sec. 125, and chap. 1, sec. 24 of same statute.

The same reason which applies to an administrator or executor, in regard to suing out or prosecuting a writ of error,

must obviously apply to their prosecuting such writ when previously sued out by the deceased. If judgment could not be entered for or against them in the one case, very clearly it could not be in the other. And we have found no authority sanctioning such a distinction.

If this motion shall be granted, we must either affirm the judgment below and order it to be executed, or reverse it and arrest it, or order a new trial of the defendant. But, in either case, the order can be effective only upon the assumption that some one representing or standing in the place of the dead man can be affected by it. A judgment can not be enforced when the only subject matter upon which it can operate has ceased to exist. When the defendant, ordered to be punished, is dead, the execution of that order is absolutely arrested; — for the future it is as entirely a nullity as any subsequent judgment arresting it can possibly make it to be. There can not be a new trial with the executors or administrators as parties, if a new trial should be awarded, because the common law admits the trial of no one for felony who is not personally present at the trial. It would seem, therefore, to be clear that to now order either of these things to be done as of some day during the life of the deceased, and after he had sued out the writ of error, would be as vain and useless as to order them to be done now. The judgment being purely personal can not, by any possibility, after the death of the person, be made to relate back and have had an effect on his person which in fact it did not have; that is, it can not make him actually have had an opportunity for a new trial, or have arrested his punishment, or have denied his right in these respects.

We think the conclusion is inevitable that the writ of error abated upon the death of O'Sullivan, and that a judgment *nunc pro tunc* can not prevent that result.

The motion to enter judgment *nunc pro tunc* is overruled. The writ of error is abated. No judgment will be entered for the costs of either party.          *Writ of error abated.*