**STATE of Minnesota, Respondent,**

**v.**

**Mark Myrl BURRELL, Appellant.**

**No. A11–1517.**

Supreme Court of Minnesota.

Oct. 2, 2013.

Lori Swanson, Attorney General, Saint Paul, MN; and Kristen Nelsen, Mower County Attorney, Jeremy Clinefelter, Assistant County Attorney, Austin, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Benjamin J. Butler, As-

sistant State Public Defender, Saint Paul, MN, for appellant.

## OPINION

GILDEA, Chief Justice.

Appellant Mark Myrl Burrell filed a direct appeal challenging his forgery convictions. While his direct appeal was pending in the Minnesota Court of Appeals, Burrell died. Defense counsel filed a motion to abate the prosecution *ab initio,* arguing that Burrell's death required the court of appeals to vacate the convictions and remand to the district court with instructions to dismiss the complaint. After denying the abatement motion, the court of appeals dismissed the appeal. Because we conclude that a prosecution should abate *ab initio* when the defendant dies during an appeal of right from a final judgment of conviction in which restitution is not at issue, we reverse the court of appeals' denial of the abatement motion, vacate Burrell's convictions, and remand to the district court with instructions to dismiss the complaint.

This case arises from the decision of Burrell and his brother, Steven Burrell ("Steven"), to switch identities. After the brothers had lived as each other for approximately 12 years, attorneys advised both of them that they had been living as each other for so long that it was impossible to stop. Attorneys also advised Burrell and his brother, however, that there were certain things, including marriage and the purchase of property, they should do under their legal names. Steven later purchased two properties in Austin, one at 204 South Main and one at 1604 East Oakland, under his own name. Steven and the brothers' mother lived at the 204 South Main address, and Burrell lived at both addresses at various times.

By 2007, Steven had moved to Florida. While Steven was living in Florida, the Mower County Auditor–Treasurer's Office sent a letter to Steven advising him that because he had not paid property taxes for several years, both Austin properties were going into forfeiture. The letter stated that Steven could avoid forfeiture by signing a confession of judgment for each property, which is an agreement to pay the delinquent property taxes at a payment schedule of 10 percent of the owed amount per year. Steven was unable to return to Minnesota to sign the confessions of judgment and authorized Burrell to sign on his behalf and pay the taxes. Burrell consulted with an attorney, who advised him that he could sign the confessions of judgment and pay the taxes as long as he did not intend to defraud anyone or benefit from it. Accordingly, on December 21, 2007, Burrell, pretending to be Steven, signed the two confessions of judgment as Steven Burrell. Burrell made the required payments from December 2007 until February 2010.

On January 17, 2010, Steven died intestate in Nebraska. Burrell went to the Mower County Auditor–Treasurer and asked if there was a way to transfer Steven's two Austin properties to Burrell without going through probate. Burrell, who had been living in Austin as Steven Burrell, explained that he was really Mark Burrell, not Steven; that he and his brother had been switching identities for years; and that he wanted to transfer title to the properties to the name of Mark Burrell. The auditor-treasurer notified police that there was an individual who had entered into an agreement with Mower County as Steven Burrell but who now claimed to be Mark Burrell.

Austin police investigated and determined that Burrell had identified himself to several people in Austin as both Steven

and Mark Burrell. Additionally, police determined that the late Steven Burrell had been living in Nebraska under the name of Mark Burrell. At the conclusion of the investigation, Burrell was charged with two counts of aggravated forgery in violation of Minn.Stat. § 609.625, subd. 1(1) (2012), one count for each of the confessions of judgment that Burrell signed in December 2007.[1]

Following a jury trial, Burrell was found guilty of both counts of aggravated forgery. The district court convicted Burrell of both offenses and sentenced him to 12 months and 1 day in prison for each charge, to be served concurrently. The court also imposed a $3,000 fine, which is still outstanding, but no restitution was sought or awarded.

Burrell filed a direct appeal in the Minnesota Court of Appeals challenging his convictions and sentence. Burrell raised five issues in his direct appeal: (1) insufficient evidence to support the convictions; (2) plain error in the jury instruction for intent to defraud; (3) error in permitting the alternate juror to deliberate; (4) prosecutorial misconduct during closing argument; and (5) error in imposing a sentence for each conviction.[2] Oral argument was held in the court of appeals on June 20, 2012.

Five days later, on June 25, 2012, defense counsel was informed that police had discovered Burrell's body in his home in Nebraska. On July 5, 2012, defense counsel filed a motion in the court of appeals to abate the prosecution *ab initio*.

The court of appeals denied the motion, explaining that although the doctrine of abatement *ab initio* was "not itself new, its use in this factual context in Minnesota would be new." *State v. Burrell*, No. A11–1517, Order Opinion at 3 (Minn.App. filed Nov. 7, 2012). Noting a recent trend in other jurisdictions to limit the doctrine, the court of appeals concluded that it was "not fitting for us to adopt and apply the abatement ab initio doctrine here." *Id.* After denying the motion to abate the prosecution *ab initio*, the court of appeals dismissed Burrell's direct appeal. We granted Burrell's petition for review.

Burrell argues that the doctrine of abatement *ab initio* requires the appellate court to vacate his convictions and remand to the district court with instructions to dismiss the complaint because he died during the pendency of his appeal of right from a final judgment of conviction. The State argues that we should simply dismiss Burrell's appeal. Whether to adopt the doctrine of abatement *ab initio* is a question of law that we review de novo. *In re McCaskill*, 603 N.W.2d 326, 327 (Minn. 1999).

## I.

Before turning to the parties' arguments, we begin with a discussion of the doctrine of abatement *ab initio*. "Abatement" is defined as the discontinuance of a

---

1. Although Burrell was also charged with possession of a short-barreled shotgun and theft, those charges were dismissed before trial. When the State included information about the dismissed charges in its brief and appendix, Burrell moved to strike the information, arguing that it is outside the record in this case. Because we conclude that the information in question is outside the record on appeal, we grant the motion to strike. *See Holt v. State*, 772 N.W.2d 470, 481 n. 5 (Minn. 2009) (striking references to a criminal complaint that was outside the record on appeal).

2. The State concurred that the district court erred in imposing multiple sentences for a single behavioral incident and joined Burrell in his request to vacate one of the sentences. In light of our holding that Burrell's convictions abate and the complaint against him must be dismissed, Burrell's request is moot.

legal proceeding "for a reason unrelated to the merits of the claim." *Black's Law Dictionary* 3 (9th ed. 2009). "*Ab initio*" means "[f]rom the beginning." *Id.* at 5.

 The federal circuit courts have uniformly adopted a rule that death pending direct review of a criminal conviction discontinues not only the appeal but also all proceedings in the prosecution from the beginning. *Durham v. United States*, 401 U.S. 481, 483, 91 S.Ct. 858, 28 L.Ed.2d 200 (1971), *overruled to the extent that it is inconsistent by Dove v. United States*, 423 U.S. 325, 96 S.Ct. 579, 46 L.Ed.2d 531 (1976).[3] This rule is commonly referred to as the doctrine of abatement *ab initio*. *United States v. Estate of Parsons*, 367 F.3d 409, 413 (5th Cir.2004). When "death has deprived the accused of his right to" appellate review of his conviction, "the interests of justice ordinarily require that [the defendant] not stand convicted without resolution of the merits of his appeal, which is an integral part of our system for finally adjudicating his guilt or innocence." *Id.* at 413–14 (emphasis omitted) (quoting *United States v. Pauline*, 625 F.2d 684, 685 (5th Cir.1980)).[4]

Among the states, the most common approach among courts that have ad-

3. Of the federal courts of appeal that have considered the question of what to do when a criminal defendant dies while his appeal is pending, all have adopted the doctrine of abatement *ab initio*. *United States v. Rich*, 603 F.3d 722, 724 (9th Cir.2010); *United States v. Estate of Parsons*, 367 F.3d 409, 413 (5th Cir.2004); *United States v. Christopher*, 273 F.3d 294, 299 (3d Cir.2001); *United States v. Wright*, 160 F.3d 905, 908 (2d Cir. 1998); *United States v. Pogue*, 19 F.3d 663, 665 (D.C.Cir.1994); *United States v. Davis*, 953 F.2d 1482, 1486 (10th Cir.1992); *United States v. Schumann*, 861 F.2d 1234, 1236 (11th Cir.1988); *United States v. Dudley*, 739 F.2d 175, 176–77 (4th Cir.1984); *United States v. Moehlenkamp*, 557 F.2d 126, 128 (7th Cir.1977); *United States v. Toney*, 527 F.2d 716, 720 (6th Cir.1975); *Crooker v. United States*, 325 F.2d 318, 319 (8th Cir.1963).

4. The Supreme Court has approved the federal circuit courts' adoption of the doctrine of abatement *ab initio*. *Durham*, 401 U.S. at 483, 91 S.Ct. 858 (vacating affirmance of defendant's conviction and remanding to the district court "with directions to dismiss the indictment"). In *Durham*, the Court called the unanimity of the courts that have considered the impact of a defendant's death on a pending appeal as of right from a final judgment of conviction "impressive," and said that the federal circuit courts "have adopted the correct rule." *Id.* But in *Dove v. United States*, 423 U.S. 325, 96 S.Ct. 579, 46 L.Ed.2d 531 (1976), the Supreme Court declined to apply abatement. Like *Durham*, the defendant in *Dove* died while his request for discretionary review of a court of appeals' decision that *affirmed* his conviction was pending before the Court. *Dove*, 423 U.S. at 325, 96 S.Ct. 579; *United States v. Dove*, 506 F.2d 1398 (4th Cir.1974) (unpublished table decision). The Court in *Dove* dismissed the petition for a writ of certiorari, allowed the conviction to stand, and explicitly stated that *Durham* was overruled "[t]o the extent that [it] may be inconsistent with this ruling." *Dove*, 423 U.S. at 325, 96 S.Ct. 579. The federal circuit courts have acknowledged the Supreme Court's holding in *Dove*, but have declined to adopt its holding in proceedings before those courts due to the distinction between appeals of right before the federal circuits and discretionary appeals to the Supreme Court. *See, e.g., United States v. Christopher*, 273 F.3d 294, 296 (3d Cir.2001) ("In most criminal cases, proceedings in the Supreme Court differ from those in the Courts of Appeals in one fundamental respect: appeals to the Courts of Appeals are of right, but writs of certiorari are granted at the discretion of the Supreme Court."); *United States v. Moehlenkamp*, 557 F.2d 126, 128 (7th Cir.1977) ("The Supreme Court may dismiss the petition without prejudicing the rights of a deceased petitioner, for he has already had the benefit of the appellate review of his conviction to which he was entitled of right.... [But] when an appeal has been taken from a criminal conviction to the court of appeals and death has deprived the accused of his right to our decision, the interests of justice ordinarily require that he not stand convicted without resolution of the merits of his appeal....").

dressed the issue is to hold that when a criminal defendant dies while his appeal is pending, the doctrine of abatement *ab initio* applies.[5] *In re Estate of Vigliotto*, 178 Ariz. 67, 870 P.2d 1163, 1165 (App.1993); *People v. St. Maurice*, 166 Cal. 201, 135 P. 952, 952 (1913); *People v. Daly*, —— P.3d ——, 2011 WL 2308587, at *8 (Colo.App. June 9, 2011); *People v. Robinson*, 187 Ill.2d 461, 241 Ill.Dec. 533, 719 N.E.2d 662, 664 (1999); *O'Sullivan v. People*, 144 Ill. 604, 32 N.E. 192, 194 (1892); *State v. Kriechbaum*, 219 Iowa 457, 258 N.W. 110, 113 (1934); *State v. Morris*, 328 So.2d 65, 67 (La.1976); *State v. Carter*, 299 A.2d 891, 895 (Me.1973); *Commonwealth v. Eisen*, 368 Mass. 813, 334 N.E.2d 14, 14 (1975); *State v. Forrester*, 579 S.W.2d 421, 421 (Mo.Ct.App.1979); *State v. Campbell*, 187 Neb. 719, 193 N.W.2d 571, 572 (1972); *State v. Poulos*, 97 N.H. 352, 88 A.2d 860, 861 (1952); *People v. Matteson*, 75 N.Y.2d 745, 551 N.Y.S.2d 890, 551 N.E.2d 91, 92 (1989); *State v. Dixon*, 265 N.C. 561, 144 S.E.2d 622, 622–23 (1965); *Nott v. State*, 91 Okla.Crim. 316, 218 P.2d 389, 389 (App. 1950); *State v. Marzilli*, 111 R.I. 392, 303 A.2d 367, 368 (1973); *State v. Clark*, 260 N.W.2d 370, 370–71 (S.D.1977); *Carver v. State*, 217 Tenn. 482, 398 S.W.2d 719, 720–21 (1966); *Vargas v. State*, 659 S.W.2d 422, 423 (Tex.Crim.App.1983); *State v. Free*, 37 Wyo. 188, 260 P. 173, 173 (1927).

According to these courts, the purpose of criminal prosecutions is to punish the defendant, and it is useless to continue such prosecutions when the defendant is dead. *Robinson*, 241 Ill.Dec. 533, 719 N.E.2d at 663; *accord O'Sullivan*, 32 N.E. at 192; *Carver*, 398 S.W.2d at 720; *Matteson*, 551 N.Y.S.2d 890, 551 N.E.2d at 92 ("If affirmed, the judgment of conviction could not be enforced and, if reversed, there is no person to try." (citation omitted) (internal quotation marks omitted)). Additionally, "death places a defendant beyond the court's power to enforce or reverse the judgment of conviction, thereby preventing effective appellate review of the validity of the conviction." *Matteson*, 551 N.Y.S.2d 890, 551 N.E.2d at 92; *accord Kriechbaum*, 258 N.W. at 113; *Morris*, 328 So.2d at 67; *Carver*, 398 S.W.2d at 720; *Vargas*, 659 S.W.2d at 422 ("The death of the appellant during the pendency of the appeal deprives this Court of jurisdiction.").

There are several states, however, that have declined to adopt the doctrine of abatement *ab initio*. In ten of these states, the death of a criminal defendant during the pendency of his appeal renders the appeal moot, and the appeal is dismissed and the conviction stands. *Wheat v. State*, 907 So.2d 461, 464 (Ala.2005);[6]

---

**5.** Unlike other states, Oregon's policy, which is a combination of abatement and dismissal, is contained in a court rule. Or. R.App. P. 8.05. The rule provides that upon learning of the defendant's death, any party may notify the court and the court should dismiss the appeal. *Id.* at 8.05(2)(b)-(c). If the appeal is the State's appeal, the appeal is simply dismissed. *Id.* at 8.05(2)(c)(i). If it is the defendant's appeal and "the defendant has made an assignment of error that, if successful, would result in reversal of the conviction, the court will vacate the judgment and dismiss the appeal." *Id.* at 8.05(2)(c)(ii). Also, "if the defendant has assigned error only to . . . the sentence," the court will dismiss the appeal but not vacate the judgment. *Id.* at 8.05(2)(c)(iii). But, "[i]f the defendant has assigned error to a monetary provision of the sentence, the court will dismiss the appeal and vacate the challenged monetary provision." *Id.*

**6.** Alabama applies a variation of the dismissal doctrine in which the appellate court dismisses the appeal but instructs the trial court to place a notation in the record stating that "the defendant's conviction removed the presumption of the defendant's innocence, but that the conviction was appealed and it was neither affirmed nor reversed on appeal because the defendant died while the appeal of

*State v. Trantolo*, 209 Conn. 169, 549 A.2d 1074, 1074 (1988); *Perry v. State*, 575 A.2d 1154, 1156 (Del.1990); *Harris v. State*, 229 Ga. 691, 194 S.E.2d 76, 77 (1972); *State v. Korsen*, 141 Idaho 445, 111 P.3d 130, 135 (2005); *Whitehouse v. State*, 266 Ind. 527, 364 N.E.2d 1015, 1016 (1977); *Royce v. Commonwealth*, 577 S.W.2d 615, 616 (Ky. 1979); *People v. Peters*, 449 Mich. 515, 537 N.W.2d 160, 163 (1995); *State v. Benn*, 364 Mont. 153, 274 P.3d 47, 50 (2012); *State v. Anderson*, 281 S.C. 198, 314 S.E.2d 597, 597 (1984). The courts in these states recognize that the judicial power of the courts is limited to justiciable controversies. *Benn*, 274 P.3d at 50 (citation omitted) (internal quotations marks omitted). If, therefore, "the issue presented at the outset of the action has ceased to exist or is no longer live, or if the court is unable due to an intervening event or change in circumstances to grant effective relief or to restore the parties to their original position, then the issue before the court is moot." *Id.* at 50 (internal quotation marks omitted); *accord Trantolo*, 549 A.2d at 1074; *Royce*, 577 S.W.2d at 616.

Further, these courts believe dismissal of the appeal is appropriate because "[a] conviction ... removes the presumption of innocence, and the pendency of an appeal does not restore that presumption." *Wheat*, 907 So.2d at 462; *accord Whitehouse*, 364 N.E.2d at 1016; *Peters*, 537 N.W.2d at 163. Dismissing the appeal, according to these courts, also avoids many of the pitfalls of abatement, including

"deny[ing] the victims the fairness, respect and dignity guaranteed [under the law] by preventing the finality and closure they are designed to provide."[7] *Korsen*, 111 P.3d at 135.

Recently, several states have begun to move away from abatement *ab initio* or automatic dismissal upon the death of the defendant. Currently, fourteen states do not preclude appellate courts from considering the merits of a deceased criminal defendant's appeal. *State v. Carlin*, 249 P.3d 752, 762–63 (Alaska 2011); *State v. Clements*, 668 So.2d 980, 982 (Fla.1996); *State v. Makaila*, 79 Hawai'i 40, 897 P.2d 967, 972 (1995); *State v. Jones*, 220 Kan. 136, 551 P.2d 801, 804 (1976); *Surland v. State*, 392 Md. 17, 895 A.2d 1034, 1045 (2006); *Gollott v. State*, 646 So.2d 1297, 1303–04 (Miss.1994); *State v. Gartland*, 149 N.J. 456, 694 A.2d 564, 569 (1997); *State v. Salazar*, 123 N.M. 778, 945 P.2d 996, 1004 (1997); *State v. McGettrick*, 31 Ohio St.3d 138, 509 N.E.2d 378, 382 (1987); *Commonwealth v. Walker*, 447 Pa. 146, 288 A.2d 741, 744 (1972); *State v. Christensen*, 866 P.2d 533, 536–37 (Utah 1993); *Bevel v. Commonwealth*, 282 Va. 468, 717 S.E.2d 789, 795–96 (2011); *State v. Webb*, 167 Wash.2d 470, 219 P.3d 695, 699 (2009); *State v. McDonald*, 144 Wis.2d 531, 424 N.W.2d 411, 414–15 (1988). If, after considering the merits of the appeal, the appellate court concludes that the trial court erred and a new trial is required, the defendant's conviction then abates due to the court's inability to retry a deceased

the conviction was pending and the appeal was dismissed." *Wheat*, 907 So.2d at 464.

7. In some jurisdictions, such as Montana, the courts recognize that restitution "may remain a viable and concrete issue" and allow that "upon a defendant's death, the task of demonstrating that the appeal has not been mooted will be the burden of the defendant's personal representative." *Benn*, 274 P.3d at 51. Consequently, "[i]f the defendant's representative

establishes that the appeal involves concrete issues beyond those which are individual or personal to the defendant, for which this Court can grant effective relief, then the appeal may proceed." *Id.* Other courts, however, hold that "the logic that supports dismissing the appeal also supports enforcing the order of restitution." *Peters*, 537 N.W.2d at 166.

defendant. *Webb*, 219 P.3d at 699 ("If the substituted party appellant is successful in showing that defendant's conviction must be reversed, then, because remand for a retrial is impossible, the conviction and all associated financial obligations must be abated."); *Gartland*, 694 A.2d at 569 ("The defendant can no longer be retried for the crime."); *Christensen*, 866 P.2d at 537 ("If there is a reversal or a remand, defendant cannot be retried and the civil judgment abates.").[8]

The primary virtue of allowing the appeal to proceed is that "[i]t preserves both the presumptive validity of the judgment and the ability of the defendant, through a substituted party appointed for his or her benefit, to maintain the defendant's challenge to it." *Surland*, 895 A.2d at 1045. Consequently, "[i]t protects the interests of both parties and of the public generally and, because there are so very few instances in which the problem arises, [continuing the appeal] should create no appreciable

burden for anyone." *Id.* The defendant's right to an appeal is well recognized as "an appeal plays an integral part in the judicial system for a final adjudication of guilt or innocence and . . . a defendant who dies pending appeal should not be deprived of the safeguards that an appeal provides." *McDonald*, 424 N.W.2d at 413. Also, a deceased defendant's right to appeal was recognized at common law, where "an attainder of felony would not be affected by the death of the defendant, but that his executor or heirs could pursue a writ of error in his stead." *Bevel*, 717 S.E.2d at 795. Further, although some aspects of the appeal may be moot due to the defendant's death, "a criminal appeal, even after the defendant has died, may remain a 'present, live controversy.' Often, there will be a financial component . . . to a criminal judgment, and the appeal will thus have financial consequences for the defendant's estate." *Carlin*, 249 P.3d at 764. Also, "no prejudice is suffered by the

**8.** Of the states that allow appellate courts to consider the merits of a deceased criminal defendant's appeal, there is a split on whether the court should order substitution of another individual or entity for the deceased defendant or allow the appeal to proceed without substitution. In eight states, the court may substitute another individual or entity for the deceased defendant. *Carlin*, 249 P.3d at 763 (allowing substitution of the defendant's estate); *Makaila*, 897 P.2d at 972 (allowing substitution at the motion of the defendant's personal representative or the State); *Surland*, 895 A.2d at 1045 (allowing substitution at the motion of the defendant's estate); *Gollott*, 646 So.2d at 1304 (allowing substitution, including defendant's attorney as the defendant's successor, upon any party's motion); *Salazar*, 945 P.2d at 1004 (allowing substitution at the motion of any party or the court); *McGettrick*, 509 N.E.2d at 382 (allowing substitution of any person, including the defendant's attorney, on the motion of the defendant's personal representative or the State); *Bevel*, 717 S.E.2d at 795–96 (recognizing that "[i]t is conceivable that in a case where a criminal conviction could have a significant negative impact on a deceased defendant's estate or the rights of his heirs . . . the appeal could be prosecuted by a substituted party"); *Webb*, 219 P.3d at 699 (allowing substitution upon the motion of the deceased defendant's heirs).

In the other six states, the courts permit the appeal to continue notwithstanding the defendant's death, but have not required that a party be substituted for the defendant. *Jones*, 551 P.2d at 804 (resolving the appeal on its merits, not mentioning substitution); *Clements*, 668 So.2d at 982 (holding that the appeal may proceed for good cause and recognizing the interest of the defendant's estate, but not specifying whether substitution is required); *Gartland*, 694 A.2d at 568–69 (indicating that a motion for substitution of parties is permissible but not required); *Walker*, 288 A.2d at 744 (resolving the appeal on its merits, not mentioning substitution); *Christensen*, 866 P.2d at 535 n. 7 (noting that "since [the defendant's] death, no substitution of a party had been made. While not an issue on appeal, the issue may need to be addressed on remand"); *McDonald*, 424 N.W.2d at 415 (failing to address the issue of substitution).

deceased or his interests in allowing the appeal to continue" when "[t]he Defendant had an opportunity to participate fully in his appeal" prior to his death. *Salazar,* 945 P.2d at 1004.

In addition to the preservation of the defendant's rights, courts have identified public policy considerations supporting the continuation of a deceased criminal defendant's appeal. In *Gollott v. State,* the Mississippi Supreme Court stated that continuation of the appeal is helpful because "our lawmakers and practitioners need to be made aware of errors committed at the trial court level. Leaving convictions intact without review by this Court potentially leaves errors uncorrected which will ultimately work to the detriment of our justice system." *Gollott,* 646 So.2d at 1304; *see also McGettrick,* 509 N.E.2d at 382 (proceeding with the appeal "furthers the public policy of deciding cases on their merits"). Also, "because collateral proceedings may be affected by criminal proceedings ... it is in the interest of society to have a complete review of the merits of the criminal proceedings." *McDonald,* 424 N.W.2d at 414; *see also Jones,* 551 P.2d at 804 ("Oftentimes rights other than those of an individual defendant are involved. The right to inherit, or to take by will ... may be affected. The family of the defendant and the public have an interest in the final determination of a criminal case." (citation omitted)). Finally, "[t]he interests of the victim and the community[ ] ... in condemning the offender persist even after the defendant's death." *Carlin,* 249 P.3d at 764.

In sum, courts across the country take different approaches when a defendant dies while his appeal of right of his conviction is pending. But the majority apply the doctrine of abatement *ab initio.* With this case law in mind as context, we turn to the parties' arguments.

## II.

Burrell argues that we adopted the doctrine of abatement *ab initio* in our 2010 order in *State v. Hakala,* No. A08–0215, Order (Minn. filed June 2, 2010), and that *Hakala* controls the outcome of this case and requires abatement. The State argues that *Hakala* does not control the outcome here. If we conclude that *Hakala* is not controlling, Burrell urges that we should align ourselves with the majority rule, adopt the doctrine of abatement *ab initio,* and direct that the prosecution against him be dismissed. The State urges us to affirm the court of appeals and dismiss Burrell's appeal, leaving his convictions intact. While we disagree that *Hakala* controls, we agree with Burrell that his convictions should be abated and that the prosecution against him should be dismissed.

## A.

We turn first to Burrell's argument that *Hakala* requires that Burrell's convictions be abated. In *State v. Hakala,* the defendant was convicted of three counts of criminal sexual conduct after a jury trial. 763 N.W.2d 346, 348 (Minn.App.2009). The court of appeals reversed his convictions in a published opinion. *Id.* at 353. We granted the State's petition for review and heard oral argument on the merits of the appeal on November 9, 2009. Hakala died on March 20, 2010, before an opinion was issued, and his attorney filed a motion asking us to "discharge the petition for review, dismiss the appeal as moot, and dismiss all charges against [Hakala] ... under the doctrine of abatement." *State v. Hakala,* No. A08–0215, Order at 1 (Minn. filed June 2, 2010). The State opposed the motion, agreeing that the case was moot but urging us to find that the case was functionally justiciable and issue an opin-

ion. *Id.* Relying on *United States v. Edwards,* which we described as applying "the doctrine of abatement when a defendant's conviction was reversed by the court of appeals on direct appeal and the defendant died after certiorari was granted," we dismissed Hakala's appeal as moot, vacated his convictions, and remanded to the district court for dismissal of the complaint. *Hakala,* at 2 (citing *United States v. Edwards,* 415 U.S. 800, 801 n. 1, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974)).

Burrell argues that *Hakala* controls our analysis here because the facts of his case are materially indistinguishable from the facts in *Hakala.* To support his argument, Burrell emphasizes that in both cases, the opinion of the lower court was of no force because review had been granted by a higher court. The State, on the other hand, contends that *Hakala* is materially distinguishable from this case because Hakala died pending discretionary review of a divided court of appeals' opinion reversing his conviction and Burrell died pending his appeal of right before any appellate review had occurred. We agree with the State.

■ *Hakala* is materially distinguishable from this case because at the time of Hakala's death, his convictions had been reversed by the court of appeals and a new trial had been ordered. 763 N.S.2d at 353. By contrast, at the time of Burrell's death, his convictions had not been reversed by the court of appeals. This factual distinction is important to application of the doctrine of abatement *ab initio.* When a person, like the defendant in *Hakala,* dies after a final judgment of conviction has been *reversed* by the court of appeals, the case for abating the prosecution *ab initio* is strongest. *See Edwards,* 415 U.S. at 801 n. 1, 94 S.Ct. 1234 (abating the prosecution *ab initio* when the court of appeals had reversed the conviction). In such a situation, the defendant is denied more than *a resolution* of the merits of his appeal; he is denied *the benefit* of his successful appeal. The reversed convictions in *Hakala* provided a compelling reason to abate the prosecution *ab initio.* That reason is not present in this case, and we therefore hold that *Hakala* does not control our analysis of the abatement question presented here.

#### B.

■ We turn next to Burrell's alternative argument. Burrell argues that if we conclude, as we have, that *Hakala* is not controlling, we should recognize abatement in this case because Burrell died while his appeal of right was pending. The State argues that we should dismiss Burrell's appeal and not adopt the doctrine of abatement *ab initio.* After careful consideration, we conclude that Burrell's prosecution should be abated *ab initio.*

■■ Two primary considerations—the "finality principle" and the "punishment principle"—have informed those courts that have adopted abatement *ab initio.* *United States v. Estate of Parsons,* 367 F.3d 409, 413 (5th Cir.2004). First, with regard to finality, courts recognize that " 'the interests of justice ordinarily require that [a defendant] not stand convicted without resolution of the merits of an appeal' " because resolution of an appeal is an integral part of our criminal justice system for finally adjudicating guilt or innocence. *United States v. Wright,* 160 F.3d 905, 908 (quoting *United States v. Pogue,* 19 F.3d 663, 665 (D.C.Cir.1994)); *see also Estate of Parsons,* 367 F.3d at 413–14 ("The finality principle reasons that the state should not label one as guilty until he has exhausted his opportunity to appeal.... [N]either the state nor affected parties should enjoy the fruits of an untested conviction."). Second, with regard to punishment, "to the extent that the

judgment of conviction orders incarceration or other sanctions that are designed to punish the defendant, that purpose can no longer be served" after the defendant has died. *Wright*, 160 F.3d at 908; *see also United States v. Moehlenkamp*, 557 F.2d 126, 127 (7th Cir.1977) ("[A]n appeal of right taken from a final judgment of conviction becomes moot because of the death of the appellant."). These same two considerations lead us to conclude that we should abate Burrell's prosecution.

■ With respect to the principle of finality, we have never held that a defendant has a constitutional right to appellate review. *See Carlton v. State*, 816 N.W.2d 590, 614 (Minn.2012) (assuming without deciding that the Minnesota Constitution provides the right to one review); *Spann v. State*, 704 N.W.2d 486, 491 (Minn.2005) (explaining that a defendant does not have a constitutional right to appeal under the United States Constitution). But Minnesota law plainly recognizes the important role that the defendant's right to appeal from a judgment of conviction plays in our criminal justice system. *See Hutchinson v. State*, 679 N.W.2d 160, 162 (Minn.2004) (recognizing that a conviction is not final until "a judgment of conviction has been rendered" and "the availability of appeal exhausted") (quoting *State v. Lewis*, 656 N.W.2d 535, 538 (Minn.2003)). For example, in *Spann*, we held that an agreement in which the defendant waived his right to appeal from the judgment of conviction in order to secure a favorable sentencing recommendation from the State was invalid "based on public policy and due process considerations." 704 N.W.2d at 493. We recognized that "[t]he right to appeal implicates not only matters personal to the defendant, but broader issues as well. Once the defendant is convicted, institutional concerns that the conviction was fair and proper become paramount." *Id.*

Our rules of procedure likewise reflect the importance of the defendant's right to appeal from a judgment of conviction in our system. Our rules expressly provide that a criminal defendant has an appeal as of right from any adverse final judgment. Minn. R.Crim. P. 28.02, subd. 2(1). This rule reflects that appellate review as of right for a convicted defendant is an integral part of our system of criminal justice.

■ In short, an appellate court's resolution of a timely filed appeal as of right from a final judgment of conviction is an integral part of our system in Minnesota for finally adjudicating a defendant's guilt or innocence. When, as here, a convicted defendant has exercised his right to review but the appellate court has not yet decided the merits of that appeal, the doctrine of abatement *ab initio* ensures that the defendant is not labeled "as guilty" until he has exhausted his appeal as of right. *Estate of Parsons*, 367 F.3d at 413.

With respect to the punishment principle, the fact that it is impossible to punish Burrell—a deceased defendant—also supports the adoption of abatement *ab initio*. Indeed, the State has conceded that it cannot recover the fine that the district court imposed in this case, and that the fine must be "vacated."

■ We acknowledge, as other courts have recognized, that when a victim has been awarded restitution, the principles discussed above may not weigh in favor of abatement *ab initio*. *See United States v. Christopher*, 273 F.3d 294, 299 (3d Cir. 2001) ("Historically, restitution, an equitable remedy, was intended to reimburse a person wronged by the actions of another. . . . We are persuaded that abatement should not apply to the order of restitution . . . and thus, it survives against the estate of the deceased convict."); *United States v. Dudley*, 739 F.2d 175, 178 (4th Cir.1984)

(abating the conviction but upholding the order for restitution). But there is no victim in this case who was awarded restitution, and so we need not consider and therefore do not decide how an appellate court should resolve the abatement issue in such a circumstance.

■ Like the majority of courts that have considered this question, we conclude that when a defendant has taken an appeal as of right from a final judgment of conviction in which there has been no restitution awarded and death deprives the accused of a decision on the merits, the prosecution should be abated *ab initio*. We therefore reverse the court of appeals' denial of the abatement motion, vacate Burrell's convictions, and remand to the district court with instructions to dismiss the complaint.

Reversed, convictions vacated, and remanded.

WRIGHT, J., took no part in the consideration or decision of this case.

LILLEHAUG, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

## DISSENT

DIETZEN, Justice (dissenting).

I respectfully dissent. In my view, the court's adoption of the abatement *ab initio* rule that eliminates a criminal conviction in favor of a deceased defendant turns a blind eye to the rights of society and the victims of crimes, and ignores the trend in the law against this extreme result. Instead, the court should adopt the more rational rule of allowing the appellate court to substitute a successor in interest for the deceased defendant and consider the merits of the appeal. Therefore, I would reverse the court of appeals' decision and remand the case to that court to allow Burrell's

successors in interest to move for substitution and a hearing on the merits of his appeal. To explain my dissent, I will set forth in detail both the reasons why the majority's abatement *ab initio* rule lacks merit, and the advantages of the substitution rule that I propose.

### I.

Burrell was convicted of two counts of aggravated forgery and appealed his convictions, alleging insufficient evidence of any intent to defraud, defective jury instructions, error in allowing an alternate juror to deliberate with the jurors, prosecutorial misconduct, and error in the imposition of multiple sentences. The State joined Burrell in his request to vacate one of his sentences. Before the court of appeals could rule on the merits of Burrell's appeal, however, Burrell died.

The majority justifies adoption of an abatement *ab initio* rule that eliminates Burrell's convictions on two grounds: (1) the defendant should not stand convicted without resolution of the merits of his appeal, and (2) the purpose of punishing the defendant can no longer be served because the defendant is deceased. The majority's justifications for its new rule lack merit.

It is true that a conviction is not final until "a judgment of conviction has been rendered" and "the availability of appeal exhausted." *Hutchinson v. State*, 679 N.W.2d 160, 162 (Minn.2004) (citing *State v. Lewis*, 656 N.W.2d 535, 538 n. 2 (Minn. 2003)). Indeed, "an appeal plays an integral part in the judicial system for a final adjudication of guilt or innocence." *State v. McDonald*, 144 Wis.2d 531, 424 N.W.2d 411, 413 (1988). "[A] defendant who dies pending appeal," therefore, "should not be deprived of the safeguards that an appeal provides." *Id.; see also City of Newark v. Pulverman*, 12 N.J. 105, 95 A.2d 889, 894

(1953) (holding that there is no mootness insofar as the family of a deceased defendant is concerned and his legal representative should have the opportunity to establish on appeal that the conviction was wrongful).

But unless overturned by the appellate court, a defendant's conviction remains presumptively valid and the State has a compelling interest in maintaining the judgment of conviction. *See State ex rel. Rajala v. Rigg*, 257 Minn. 372, 382, 101 N.W.2d 608, 614 (1960) ("The judgment of conviction . . . is presumptively valid unless it appears affirmatively from the record that the court was without jurisdiction."). And "because there are so very few instances in which the problem [of a deceased defendant] arises," continuing the appeal to achieve these public policy goals "should create no appreciable burden for anyone." *Surland v. State*, 392 Md. 17, 895 A.2d 1034, 1045 (2006). Because Burrell's convictions have not been overturned by an appellate court, they remain presumptively valid, and the interests of justice favor not abating the convictions.

Significantly, English common law recognized that the interests of justice favored allowing the defendant's heirs the right to continue his appeal. *See Bevel v. Commonwealth*, 282 Va. 468, 717 S.E.2d 789, 795 (2011) (recognizing the defendant's right to continue his appeal at common law where "an attainder of felony would not be affected by the death of the defendant, but that his executor or heirs could pursue a writ of error in his stead"); *Marsh & his Wife*, (1790) 78 Eng. Rep. 481 (Q.B.); Cro. Eliz. 225 ("An executor may bring a writ of error to reverse the outlawry for felony of his testator."); 4 William Blackstone, *Commentaries on the Laws of England* 391–92 (1807); 2 William Hawkins, *A Treatise of the Pleas of the Crown* 654 (John Curwood, ed., 8th ed. 1824);

Timothy A. Razel, Note, *Dying to Get Away with It: How the Abatement Doctrine Thwarts Justice—And What Should Be Done Instead*, 75 Fordham L.Rev. 2193, 2198 (2007) (stating that courts have only applied abatement *ab initio* since the late nineteenth century and noting that some states have never adopted the doctrine of abatement *ab initio* ). The origins and justifications for abatement *ab initio* are, at best, murky, and therefore this court need not adopt the unsound doctrine of abatement *ab initio*. *See Fleeger v. Wyeth*, 771 N.W.2d 524, 529 (Minn.2009).

The majority also argues that a judgment of conviction is primarily designed to punish the defendant, that the defendant is deceased, and therefore the purpose of the judgment of conviction can no longer be served. This argument ignores the broader purpose of the criminal justice system, which recognizes not only the constitutional rights of the defendant, but also the legitimate right of society and the victims of crimes to retribution. *See Kennedy v. Louisiana*, 554 U.S. 407, 420, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008) ("[P]unishment is justified under one or more of three principal rationales: rehabilitation, deterrence, and retribution."); *see also Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011, 2028, 176 L.Ed.2d 825 (2010). Retribution serves the purpose of having a convicted defendant pay for the crime committed and the negative impact of that crime on society and the victims of the crime. In *Graham* the Supreme Court observed that "[s]ociety is entitled to impose severe sanctions . . . to express its condemnation of the crime and to seek restoration of the moral imbalance caused by the offense." *Graham*, 560 U.S. at ——, 130 S.Ct. at 2028.

Our criminal justice system recognizes the rights of victims in criminal prosecutions. *Morris v. Slappy*, 461 U.S. 1, 14,

103 S.Ct. 1610, 75 L.Ed.2d 610 (1983) ("[I]n the administration of criminal justice, courts may not ignore the concerns of victims."); *see also* Douglas E. Beloof, *Weighing Crime Victims' Interests in Judicially Crafted Criminal Procedure*, 56 Cath. U.L.Rev. 1135, 1152–53, 1158–63 (2007). Other courts have recognized that "[t]he interests of the victim ... in condemning the offender persist even after the defendant's death." *State v. Carlin*, 249 P.3d 752, 764 (Alaska 2011). Abating a defendant's conviction denies victims "fairness, respect and dignity" and prevents "finality and closure." *State v. Korsen*, 141 Idaho 445, 111 P.3d 130, 135 (2005). Crime victims are also entitled to "receiv[e] compensation for loss due to criminal activity" and "obtain[ ] retribution against the person who wronged them" by seeing the perpetrator justly convicted of the crime. Razel, *supra*, at 2209–10; *see also People v. Peters*, 449 Mich. 515, 537 N.W.2d 160, 164 (1995) (recognizing that crime victims "suffer[ ] significant losses as a result of [a] defendant's criminal conduct"). Because the victim may be entitled to restitution, "a criminal appeal, even after the defendant has died, may remain 'a present, live controversy'" with "consequences for the defendant's estate." *Carlin*, 249 P.3d at 764. Also, "collateral proceedings," including any civil action brought by the victims, "may be affected by criminal proceedings." *McDonald*, 424 N.W.2d at 414; *see also State v. Jones*, 220 Kan. 136, 551 P.2d 801, 804 (1976) ("Oftentimes rights other than those of an individual defendant are involved. The right to

inherit, or to take by will ... may be affected. The family of the defendant and the public have an interest in the final determination of a criminal case." (citation omitted)).

The majority's rule turns a blind eye to the interests of society and the victims of the crimes involved. A proposed rule allowing substitution for the deceased defendant and consideration of the merits of the appeal respects not only the constitutional rights of the defendant, but also the interests of society and the victims of the crime involved.

## II.

I propose the court adopt a rule that allows substitution of the defendant's successor in interest and continuation of the appeal. Substitution and continuation of the defendant's appeal afford the defendant, through his successor in interest, the safeguards of an appeal. Additionally, substitution and continuation "preserve[ ] both the presumptive validity of the judgment and the ability of the defendant, through a substituted party appointed for his or her benefit, to maintain the defendant's challenge to it." *Surland v. State*, 895 A.2d at 1034, 1045 (Md.2006). Finally, "no prejudice is suffered by the deceased or his interests in allowing the appeal to continue" when "[t]he [d]efendant had an opportunity to participate fully in his appeal" prior to his death.[1] *State v. Salazar*, 123 N.M. 778, 945 P.2d 996, 1004 (1997). The virtues of continuing the defendant's appeal have been recognized by the four-

---

1. The defendant's interests would also be protected in the event the appellate court reverses his convictions because in that instance the defendant's convictions would abate *ab initio* due to the trial court's inability to retry a deceased defendant. *See State v. Gartland*, 149 N.J. 456, 694 A.2d 564, 569 (1997) ("The defendant can no longer be retried for the crime."); *State v. Christensen*, 866 P.2d 533,

537 (Utah 1993) ("If there is a reversal or a remand, defendant cannot be retried...."); *State v. Webb*, 167 Wash.2d 470, 219 P.3d 695, 699 (2009) ("If the substituted party appellant is successful in showing that defendant's conviction must be reversed, then, because remand for a retrial is impossible, the conviction and all associated financial obligations must be abated.").

teen states that now allow their appellate courts to consider the merits of a deceased criminal defendant's appeal in most circumstances. *State v. Carlin,* 249 P.3d 752, 762 (Alaska 2011); *State v. Clements,* 668 So.2d 980, 982 (Fla.1996); *State v. Makaila,* 79 Hawai'i 40, 897 P.2d 967, 972 (1995); *State v. Jones,* 220 Kan. 136, 551 P.2d 801, 804 (1976); *Surland v. State,* 392 Md. 17, 895 A.2d 1034, 1045 (2006); *Gollott v. State,* 646 So.2d 1297, 1303–04 (Miss.1994); *State v. Gartland,* 149 N.J. 456, 694 A.2d 564, 569 (1997); *State v. Salazar,* 123 N.M. 778, 945 P.2d 996, 1004 (1997); *State v. McGettrick,* 31 Ohio St.3d 138, 509 N.E.2d 378, 382 (1987); *Commonwealth v. Walker,* 447 Pa. 146, 288 A.2d 741, 744 (1972); *State v. Christensen,* 866 P.2d 533, 536–37 (Utah 1993); *Bevel v. Commonwealth,* 282 Va. 468, 717 S.E.2d 789, 795–96 (2011); *State v. Webb,* 167 Wash.2d 470, 219 P.3d 695, 699 (2009); *State v. McDonald,* 144 Wis.2d 531, 424 N.W.2d 411, 414–15 (1988).

As the Maryland Court of Appeals recognized in *Surland,* "the public generally" has an interest in criminal appeals that supports substitution and continuation of a deceased criminal defendant's appeal. *Surland,* 895 A.2d at 1045. The continuation of the appeal is helpful because "our lawmakers and practitioners need to be made aware of errors committed at the trial court level. Leaving convictions intact without review by [an appellate court] potentially leaves errors uncorrected which will ultimately work to the detriment of our justice system." *Gollott,* 646 So.2d at 1304; *see also McGettrick,* 509 N.E.2d at 382 (proceeding with the appeal "furthers the public policy of deciding cases on their merits"); *McDonald,* 424 N.W.2d at 414 ("[I]t is in the interest of society to have a complete review of the merits of the criminal proceedings.").

In sum, I dissent from the majority's decision to abate *ab initio* Burrell's convic-

tions for two reasons. Abating a criminal conviction without consideration of the merits of the appeal ignores the legitimate rights of society and the victims of the crimes involved. My proposed rule allowing substitution of a successor in interest for a deceased defendant and consideration of the merits of the appeal is well grounded in the common law; and the rule respects the constitutional rights of the defendant, and the interests of society and the victims of the crimes. Consequently, I would remand this case to the court of appeals for consideration and resolution of the merits of the appeal, including the correction of any errors that may have occurred during trial.